1 | ARTHUR W. CURLEY, BAR NO. 60902
BERNADETTE BANTLY, BAR NO. 124659
2 | MEGHAN E. OLIVERI, BAR NO. 236107
BRADLEY, CURLEY, ASIANO,
3 | BARRABEE & GALE, P.C.
1100 Larkspur Landing Circle, Suite 200
4 | Larkspur, California 94939
Telephone: (415) 464-8888
5 | Facsimile: (415) 464-8887

6 | Attorneys for Defendant
BHARAT RAKSHAK, DDS
7 |

8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10 | SAN JOSE DIVISION

11 |

12 | TRUSTEES OF THE TRI-COUNTIES ) No. C-07-06332 RMW
WELFARE TRUST FUND and )
PROFESSIONAL GROUP ) **DEFENDANT'S OPPOSITION TO**
13 | ADMINISTRATORS, INC., a corporation, ) **MOTION TO REMAND**

14 | Plaintiffs, )
)
15 | v. ) Hearing Date:    March 14, 2008
) Hearing Time:    9:00 a.m.
16 | BAHRAT RAKSHAK, DDS, a ) Courtroom:       Courtroom 6, 4th Floor
professional dental corporation, d/b/a ) Judge:          Hon. Ronald M. Whyte
17 | RODEO DENTAL GROUP; LYNNE )
SIMMS, D.D.S., a professional dental )
18 | corporation, d/b/a RODEO DENTAL )
GROUP; JESSICA HUANTE, )
19 | individually; BAHRAT RAKSHAK, )
individually; LYNNE SIMMS, )
20 | individually; and DOES 1 through 15, )
inclusive, )
21 | )
Defendants. )
22 | )

23 | I.    **INTRODUCTION**

24 |         This case was properly removed to federal court by the only served defendant, Bharat

25 | Rakshak, D.D.S.  None of the other defendants, including Jessica Huante (now "Diaz"), has been

26 | properly served or appeared in this action.

27 |         Plaintiffs' First Amended Complaint ("Complaint") not only raises claims arising under

28 | federal law pursuant to the removal statute, 29 U.S.C. §1441(b), it raises federal claims for which

BRADLEY, CURLEY,
ASIANO, BARRABEE &
GALE, P.C.
1100 Larkspur Landing
Circle, Suite 200
Larkspur, CA 94939
TEL (415) 464-8888
FAX (415) 464-8887

- 1 -

1  Congress has vested the federal courts with <u>exclusive jurisdiction</u>. These claims are governed by

2  both the Labor Management Relations Act, 29 U.S.C. §185(a), *et. seq.* ("LMRA") and the

3  Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et. seq.* ("ERISA") and preempt all

4  related state claims, including all of the causes set forth in plaintiff's First Amended Complaint.

5  Plaintiffs' efforts to recharacterize these claims as "garden variety" tort claims is a sham.

6      As fully explained below, plaintiffs' Motion to Remand is wholly frivolous. The

7  Complaint was effectively removed and should now properly remain before this Court.

8  **II.    PLAINTIFFS' CLAIMS**

9  **A.    The Parties**

10     This case involves the alleged breach of a collective bargaining agreement between a

11  labor organization, Teamsters Local 890, and an employer, Rodeo Dental Group. A copy of the

12  Collective Bargaining Agreement ("CBA") is attached as Exhibit A to the Declaration of Bharat

13  Rakshak, D.D.S., filed herewith.

14     The parties are as follows:

15  •   Plaintiff Trustees of the Tri-Counties Welfare Trust Fund ("Trust Fund"). The Trust
        Fund provides health insurance benefits to employees pursuant to Article 24 of the CBA;

16

17  •   Plaintiff Professional Group Administrators, Inc. ("PGA"). PGA administers the health
        care benefits and coordinates coverage issues with health care providers;

18  •   Defendant Lynne Simms, D.D.S is an unserved  defendant and the original owner of
        Rodeo Dental Group in Salinas, California;

19

20  •   Defendant Bharat Rakshak, D.D.S. is a dentist who began working with Dr. Simms at
        Rodeo Dental Group in 2004; and

21  •   Defendant Jessica (Huante) Diaz is a former employee of Rodeo Dental Group.

22

23  **B.    The Complaint**

       The Complaint confirms that the Trust Fund "provides health benefits to eligible
24
    employees"covered by the CBA between Teamsters Local 890 and Rodeo Dental Group.
25
    Complaint, ¶¶ 9-11. Paragraph 11 of the Complaint specifically quotes Article 24 of the CBA, in
26
    pertinent part:
27

28          When a seniority employee has maintained his seniority for at least one year with
            the Employer, he shall be deemed an eligible employee in any month in which
            work was performed and shall qualify for health and welfare coverage for the

ASIANO, BARRABEE &
GALE, P.C.
1100 Larkspur Landing
Circle, Suite 200
Larkspur, CA  94939
TEL (415) 464-8888
FAX (415) 464-8887

- 2 -

DEFENDANT'S OPPOSITION TO MOTION TO REMAND

following month.

> A non-seniority employee or an employee who has not maintained his seniority for at least one (1) year, shall be eligible upon having worked eighty (80) hours for the Employer as disclosed by the payroll periods in the preceding month, and eighty (80) hours in the current month. If an employee is deemed qualified on either method of computation, the Employer shall pay such employee's health and welfare premiums for said month and the following month.

Complaint, ¶11; CBA, Rakshak Decl. Exh. A, p.15, Art 24.2 & 24.3.

The Complaint alleges that Dr. Simms and/or Dr. Rakshak hired Ms. Diaz on or about January 14, 2005, to a position within the collective bargaining unit covered by the CBA. It alleges that under the terms of a separate "Letter of Understanding" between the Teamsters and Rodeo Dental modifying the CBA, Ms. Diaz was required to work six months as a probationary employee before she could become eligible for benefits. Complaint ¶ 15. This "Letter of Understanding"[1] expressly states that it is intended to "clarify and limit" the terms of the CBA.

The Complaint further alleges that on October 3, 2005, Ms. Diaz and her prematurely delivered baby were admitted to Good Samaritan Hospital and that the baby was not discharged until in or about February 2006.    Complaint ¶ 19.

The Trust Fund retroactively denied coverage for the expensive medical treatment provided to Ms. Diaz and her baby and now alleges that Rodeo Dental Group was "delinquent" in making its premium payments pursuant to the terms of the CBA (Complaint ¶¶ 16-18) and that Ms. Diaz was never "eligible" for benefits under the terms of the CBA (Complaint ¶25) and that Rodeo Dental Group "intended to deceive" the Trust Fund into extending benefits to an ineligible employee. Complaint, ¶ 25.    Dr. Rakshak denies these allegations and contends that Ms. Diaz was, in fact, an "eligible employee" under the CBA and that the Trust Fund improperly terminated coverage in violation of the parties' agreement in order to avoid having to pay for medical services provided to Ms. Diaz and her newborn child.

**C.    Service of the Complaint**

It is undisputed that defendant Diaz was <u>not</u> personally served with the Summons and Complaint.   Rather, plaintiffs claim that service was effected by "substituted service" pursuant to

---

[1] The Letter of Understanding is appended to the CBA attached as Exhibit A to the Declaration of Bharat Rakshak, DDS, filed herewith.

BRADLEY, CURLEY,
ASIANO, BARRABEE &
GALE, P.C.
1100 Larkspur Landing
Circle, Suite 200
Larkspur, CA  94939
TEL (415) 464-8888
FAX (415) 464-8887

DEFENDANT'S OPPOSITION TO MOTION TO REMAND

1  CCP §415.20. Morbello Decl. ¶ 3. As discussed fully below, plaintiffs' attempt at "substituted

2  service" was defective  because they mailed the Summons and Complaint to the <u>wrong</u> <u>person</u> at

3  the <u>wrong</u> <u>address</u>.

4      As evidenced from the proof of service by mail, plaintiffs mailed the Summons and

5  Complaint to:

6      Jessica **Huarte**
       750 Colton Drive
7      Salinas, CA **93950**

8  Morbello Declaration, Exh. A (emphasis added).

9      Ms. Diaz' former name was "Huante," not "Huarte."  Nor was her zip code "93950."  Nor

10  did she ever receive the papers mailed to the wrong name and address.

11      In her declaration, Ms. (Huante) Diaz confirms:

12          "I live in Salinas, California, but my zip code is <u>not</u> 93950.  It is
            93907.  I have not received any legal papers in the mail from the
13          Beeson, Taylor & Bodine law firm regarding a legal action
            against me."
14
15  Diaz Decl. ¶3.  In fact, <u>there is no 93950 zip code in Salinas</u>, which presumably explains why Ms.

16  Diaz did not receive the Summons and Complaint.

17

18  III.   **LEGAL ARGUMENT**

19  A.     **Removal Was Effective by Dr. Rakshak –**
          **The Only Properly Served Defendant**
20
21      It is undisputed that Dr. Rakshak was served with the Summons and First Amended

22  Complaint on or about November 15, 2007.  It is also undisputed that defendant Lynne Simms,

23  D.D.S. has <u>never</u> been served.  The only dispute regarding service of process involves individual

24  defendant, Jessica (Huante) Diaz.  As explained below, plaintiffs failed to properly serve Ms. Diaz

25  who is, in any event, merely a nominal defendant in this action. Therefore, Dr. Rakshak had no

26  obligation to join Ms. Diaz in the removal to federal court.

27      The requirement that all defendants join in the notice of removal has several recognized

28  exceptions, two of which apply in this case.

BRADLEY, CURLEY,
ASIANO, BARRABEE &
GALE, P.C.
1100 Larkspur Landing
Circle, Suite 200
Larkspur, CA  94939
TEL (415) 464-8888
FAX (415) 464-8887

- 4 -

DEFENDANT'S OPPOSITION TO MOTION TO REMAND

1

**1.    Ms. Diaz Was Not Properly Served**

2

As plaintiffs acknowledge in their moving papers, a removing defendant has no

3 obligation to join a non-served defendant in the removal process. *Salveston v. Western States*

4 *Bankcard Assn* (9th Cir. 1984) 731 F.2d 1423,1429; *Gossmeyer v. McDonald* (7th Cir. 1997) 128

5 F3d 481, 489.

6

Dr. Rakshak's counsel, Bernadette Bantly, checked with the Monterey County Superior

7 Court Clerk prior to removing this case and was informed that the only proof of service on file was

8 for Dr. Rakshak. Bantly Decl ¶ 2. In fact, although plaintiffs claim to have served Ms. Diaz on or

9 about December 4, 2007, no proof of service was filed with the state court until after the removal

10 was effectuated on December 13, 2007. See Morbello Decl. Exh. A; Bantly Decl ¶ 3 & Exh. A .

11 In any event, plaintiffs' attempts to sandbag Dr. Rakshak by waiting to file this proof of alleged

12 service must fail because the purported "substituted service" on Ms. Diaz was defective.

13

California Code of Civil Procedure sets forth a detailed multi-step process for substituted

14 service to be effective. In particular, section §415.20 requires that the Summons and Complaint be

15 mailed to the defendant at his or her "usual mailing address." Section 415.20 requires **strict**

16 **compliance**. "In order to obtain in personam jurisdiction through any form of constructive service

17 there must be strict compliance with the requisite statutory procedures." *Zirbes v. Stratton* (1986)

18 187 Cal.App. 3d 1407, 1416. *See also Corcoran v. Arouh* (1994) 24 Cal.App.4th 310 (service

19 improper because no connection between defendant and address at which substituted service was

20 allegedly made upon him).

21

Here, plaintiffs' attempt at substituted service was defective because they mailed the

22 Summons and Complaint to the wrong person at the wrong address. Most importantly, Ms. Diaz

23 never received the papers. Diaz Decl. ¶3. For all of these reasons, Ms. Diaz was not properly

24 served and, therefore, was not required to join in the removal process.

25

**2.    Ms. Diaz Is a Nominal Defendant**

26

Ms. Diaz is a nominal defendant only. Otherwise, plaintiffs would have taken a default

27 judgment against her due to her failure to respond to the Complaint. For this separate and

28 additional reason, Dr. Rakshak had no obligation to join Ms. Diaz in the removal process. As the

BRADLEY, CURLEY,
ASIANO, BARRABEE &
GALE, P.C.
1100 Larkspur Landing
Circle, Suite 200
Larkspur, CA 94939
TEL (415) 464-8888
FAX (415) 464-8887

DEFENDANT'S OPPOSITION TO MOTION TO REMAND

1  only properly served defendant, Dr. Rakshak was entitled to remove the action entirely on his own.

2         **B.**     **Plaintiffs Claims Are Preempted by the LMRA**

3        The LMRA provides federal jurisdiction over and authorizes federal courts to fashion a

4  body of federal common law to enforce collective bargaining agreements. 29 U.S.C. 185(a);

5  *Textile Workers v. Lincoln Mills* (1957) 353 U.S. 448, 455-456. The body of common law

6  authorized by the LMRA **completely preempts state law** claims for alleged violation of a

7  collective bargaining agreement. *Franchise Tax Board v. Construction Laborers Vacation Trust*

8  (1983) 463 U.S. 1, 23.

9        One of the primary rationales for this complete preemption is to ensure the uniform

10  interpretation of labor agreements.  Different interpretations of contract terms by state and federal

11  courts would "inevitably exert a disruptive influence upon both the negotiation and administration

12  of collective bargaining agreements...[and] would tend to stimulate and prolong disputes as to

13  [their] interpretation." *Teamsters Local 174 v. Lucas Flour Co.* (1962) 369 U.S. 95, 103-104.

14        The test for LMRA preemption is whether resolution of the state law claim requires the

15  court to interpret a collective bargaining agreement.  *Lingle v. Norge Div. Of Magic Chef, Inc.*

16  (1988) 486 U.S. 399, 412.  Plaintiff's artful characterization of the claims is not controlling.

17  Rather, it is the substance of the claims that determines preemption.  Thus, a plaintiff cannot

18  escape the preemptive effect of the LMRA by recharacterizing their contract claims as "fraud" or

19  "negligence" or other tort claims. *Young v. Anthony's Fish Grottos, Inc.*  (9th Cir. 1987) 830 F.2d

20  993, 999.

21        The Supreme Court's seminal decision in *Allis-Chambers v. Lueck* (1985) 471 U.S. 202

22  is instructive.  In *Allis-Chambers*, an employee claimed that his employer harassed him and,

23  thereby, hindered his receipt of benefits under an employer-funded insurance policy included in the

24  collective bargaining agreement.  The employee brought a state tort claim against his employer for

25  bad-faith handling of his insurance claim.  The Supreme Court held that such claim was

26  preempted, stating:

27               If the policies that animate § 301 are to be given their proper range, . . . the pre-emptive effect of § 301 must extend beyond suits alleging contract violations.

28               These policies require that "the relationships created by [a collective-bargaining] agreement" be defined by application of "an evolving federal common law

BRADLEY, CURLEY,
ASIANO, BARRABEE &
GALE, P.C.
1100 Larkspur Landing
Circle, Suite 200
Larkspur, CA  94939
TEL (415) 464-8888
FAX (415) 464-8887

DEFENDANT'S OPPOSITION TO MOTION TO REMAND

grounded in national labor policy."

*Id.* At 1911, quoting *Bowen v. United State Postal Service* (1983) 459 U.S. 212, 224-25.

Following the *Allis-Chalmers* decision, the Ninth Circuit has consistently ruled that state law claims for fraud related to a collective bargaining agreement are preempted by the LMRA. *See e.g., Bale v. General Telephone Co.* (9th Cir. 1986) 795 F2d 775 (state law claims for fraudulent misrepresentation preempted).

Here, all of plaintiff's claims arise directly from the parties' collective bargaining agreement, which is repeatedly referred to throughout the First Amended Complaint. A copy of the CBA is attached as Exhibit A to the accompanying Declaration of Bharat Rakshak, D.D.S. <u>As explained below, these claims could not conceivably be resolved without extensive interpretation of numerous provisions of the CBA relating to the following issues:</u>

**1.    Eligibility**

One of the primary issues in this case is whether former employee Jessica (Huante) Diaz was "eligible" for medical benefits based on her hours worked. Her eligibility can only be determined based on an interpretation of **Article 24** of the CBA entitled "Health and Welfare, Major Medical and Dental." This analysis is complicated by the subsequent "Letter of Understanding" between Rodeo Dental and Teamsters Local 890, which modified the eligibility requirements and requires additional consideration. See Rakshak Decl. Exh. A.

**2.    Seniority**

**Article 24** provides that only a "seniority employee" is eligible for benefits. Seniority is defined in **Article 14** of the Collective Bargaining Agreement. The effect of Ms. Diaz' pregnancy leave on her seniority and eligibility for benefits must also be considered by analyzing **Article 20** regarding "Leaves of Absence." See Rakshak Decl. Exh A.

**3.    Premium Payments By Employer**

Plaintiffs assert that they terminated coverage for nonpayment of premiums, although another explanation is that they terminated coverage to avoid having to pay for the expensive medical services incurred by their insured, Jessica (Huante) Diaz and her prematurely born child. This issue cannot be resolved without analyzing **Article 24.1** regarding premium

BRADLEY, CURLEY,
ASIANO, BARRABEE &
GALE, P.C.
1100 Larkspur Landing
Circle, Suite 200
Larkspur, CA 94939
TEL (415) 464-8888
FAX (415) 464-8887

- 7 -

DEFENDANT'S OPPOSITION TO MOTION TO REMAND

payments and **Article 27** regarding delinquencies. See Rakshak Decl. Exh A.

Thus, unlike the cases cited by plaintiffs[2], resolution of this action will necessarily require that the Court review and analyze numerous provisions of the CBA that are inexorably intertwined with plaintiffs' claims.

### C.    Plaintiffs' Claims are Also Preempted by ERISA

Except for state insurance laws, ERISA "shall supercede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). This provision of ERISA was modeled after the LMRA and is likewise intended to develop a body of federal common law under ERISA designed to assure a nationally uniform administration of employee benefit plans. *Aetna Health, Inc. V. Davila* (2004) 542 U.S. 200, 208. As with the LMRA, this **complete preemption** creates federal removal jurisdiction and any state law claims covered by ERISA are recharacterized as claims arising under federal law and removable to federal court. *Metropolitan Life Ins. Co. V. Taylor* (1987) 481 U.S. 58, 66.

In this case, all of plaintiffs claims are alleged by health plan trustees/administrator against a health plan fiduciary, Rodeo Dental Group, and relate directly to the management of an employee benefit plan. Section 502(a) of ERISA provides comprehensive remedies for such claims, including actions to recover benefits due and/or enforce rights under the plan. These remedies supercede plaintiffs' alleged common law state claims, including their claims for fraud, negligence and misrepresentation. 29 U.S. C. 1144(a); *Olsen v. General Dynamic Corp.* (9th Cir. 1991) 960 F.2d 1418, 1422-23.

In *Olsen*, an employee brought an action against his employer for fraud relating to his employee benefit plan, claiming that the employer made misrepresentations concerning the

---

[2] No analysis of the collective bargaining agreement was required in *Operating Engineers Pension Trust v. Wilson* (9th Cir. 1990) 915 F2d 535, because the fraud claim was based on conduct that allegedly induced the employee into signing an agreement and was therefore conduct extraneous to the agreement. Similarly, in *Felix v. Lucent Technologies* (10th Cir. 2004) 387 F.3d 1146, the fraud claims were based on an employer's fraudulent representations that induced employees to retire early and, thus, were also extraneous to the agreement. In contrast, in this case, the validity of each and every claim in plaintiffs' Complaint will require the Court to analyze the specific terms of the CBA.

BRADLEY, CURLEY,
ASIANO, BARRABEE &
GALE, P.C.
1100 Larkspur Landing
Circle, Suite 200
Larkspur, CA  94939
TEL (415) 464-8888
FAX (415) 464-8887

DEFENDANT'S OPPOSITION TO MOTION TO REMAND

benefits. The Ninth Circuit affirmed that the fraud claim was preempted by ERISA because it "related to" an employee benefit plan. The Ninth Circuit held:

> "Section 514(a) of ERISA provides that the Act 'shall supercede any and all State laws insofar as they may relate to any employee benefit plan.' Section 514(c)(1) indicates that <u>this preemption provision extends to all state common law causes of action</u> - provided, of course, that they relate to an employee benefit plan. As the Supreme Court has noted, this preemption clause is 'deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern.' Consistent with that purpose, 'the phrase "relate to" [is] given its broad common-sense meaning, such that a state law "relates to" a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such plan...
>
> Given the Supreme Court's directive that ERISA's preemption provision is to be construed broadly, <u>it is difficult to see how [the employee's] fraud claim could be found **not** to 'relate to' an employee benefit plan."</u>

*Id.* At 1420-21 (emphasis added; citations omitted).

Likewise, despite plaintiffs' artful pleading and attempts to persuade the Court otherwise, this case **relates directly to** the employee benefit plan administered by the Trust Fund and PGA. All of the key issues in this case, including seniority, eligibility, premium payments and delinquencies, if any, must be analyzed in direct reference to the specific definitions and other terms of the CBA and related plan documents. Accordingly, as in *Olsen*, it is hard to imagine how plaintiffs claims in this case could be found not to "relate to" an employee benefit plan.

Plaintiffs cite no case law that compels a different result. The only Ninth Circuit case cited by plaintiffs on this issue is *State Carpenters Pension Trust Fund v. Citibank* (9th Cir. 1997) 125 F.3d 715, which is inapposite. In that case, the pension trust fund was involved in a commercial dispute with the bank relating to the handling of pension investments. On those facts, the Ninth Circuit found no ERISA preemption and reiterated its position that:

> "The key to distinguishing between what ERISA preempts and what it does not lies, we believe, in recognizing that the statute comprehensively regulates certain *relationships:* for instance, the relationship between plan and plan member, between plan and employer, between employer and employee (to the extent an employee benefit plan is involved), and between plan and trustee.
>
> But ERISA doesn't purport to regulate those relationships where a plan operates just like any other commercial entity - for instance, the relationship between the plan and its own employees, or the plan and its insurers or creditors, or the plan and the landlords from whom it leases office space."

BRADLEY, CURLEY,
ASIANO, BARRABEE &
GALE, P.C.
1100 Larkspur Landing
Circle, Suite 200
Larkspur, CA 94939
TEL (415) 464-8888
FAX (415) 464-8887

DEFENDANT'S OPPOSITION TO MOTION TO REMAND

1  *State Carpenters Pension Trust Fund v. Citibank, supra,* 125 F.3d at 724.

2        Here, there is no commercial relationship between the parties. Rather, plaintiffs'

3  claims involve an ERISA benefit plan, an employer and an employee. Pursuant to Ninth Circuit law,

4  these claims are preempted. For this separate and independent reason, removal was Dr.

5  Rakshak was appropriate.

6

7        **D.    The Related State Court Action Has No Bearing On This Removed Case**

8        Despite plaintiffs' legally unsupported, but creative attempts to argue otherwise, the

9  pendency of another related state court proceeding does <u>not</u> affect the removal analysis in this

10  case. Dr. Rakshak is only a nominal defendant in the related state court proceeding in Santa

11  Clara Superior Court. Moreover, removal of the related state law claim filed by Good

12  Samaritan Hospital would not have been proper because a health care provider's suit against an

13  ERISA plan for payment is generally not subject to removal. *Hermann Hosp. V. MEBA Med.*

14  *& Benefits Plan* (5th Cir. 1988) 845 F2d 1286, 1288-1289.

15        In any event, Dr. Rakshak has dutifully filed and served both a "Notice of Pendency of

16  Other Proceedings" and a "Certificate of Interested Parties" in this case pursuant to Northern

17  District Local Rule 3-13. Presumably, the parties and the Court will address the issue of

18  consolidation at or before the April 18, 2008 Case Management Conference.

19        **IV.    CONCLUSION**

20        For all of the foregoing reasons, defendant Bharat Rakshak, D.D.S. properly removed this

21  action to federal court where it should remain.

22  Dated:  February 14, 2008                    Respectfully submitted,

23                                               BRADLEY, CURLEY, ASIANO,
24                                               BARRABEE & GALE, P.C.

25

26                                               By: _____
                                                 BERNADETTE BANTLY
27                                               Attorney for Defendant
                                                 Bharat Rakshak, D.D.S.

28  H:\Docs\TDIC\7356\P\Opposition to Motion to Remand.wpd

BRADLEY, CURLEY,
ASIANO, BARRABEE &
GALE, P.C.
1100 Larkspur Landing
Circle, Suite 200
Larkspur, CA  94939
TEL (415) 464-8888
FAX (415) 464-8887

- 10 -

DEFENDANT'S OPPOSITION TO MOTION TO REMAND

**PROOF OF SERVICE**
C.C.P. Section 1013a, C.C.P. Section 2015.5
Trustees of the Tri-Counties Welfare Trust Fund, et al. v. Bahrat Rakshak, DDS, et al.
Monterey County Superior Court, Case No. M 86583
United States District Court Northern District of California, Case No. C 07-06332 RMW

I, the undersigned, declare that:

I am employed in the County of Marin, State of California. I am over the age of 18 years and not a party to the within action. My business address is 1100 Larkspur Landing Circle, Suite 200, Larkspur, CA 94939.

On **February 15, 2008**, I served the attached:

**DEFENDANT'S OPPOSITION TO MOTION TO REMAND**

(___) **BY FACSIMILE**: By transmitting the same from a facsimile machine (415) 464.8887 to the person(s) identified below whose facsimile transmission machine telephone number(s) listed below. The transmission was reported complete without error by a transmission report issued by the sending facsimile transmission machine.

( XXX ) **BY MAIL**: I placed a true copy thereof in a sealed envelope, with postage thereon fully prepaid for first-class mail, in the designated outgoing mail receptacle at Bradley, Curley, Asiano, Barrabee & Gale for collection by another employee who is responsible in the normal course of business, for depositing the stamped envelopes for mailing this same day in the United States Mail at 1100 Larkspur Landing Circle, Larkspur, California addressed to:

| | |
|---|---|
| **Attorneys for Plaintiffs**<br>**Matthew Morbello, Esq.**<br>**Teague P. Paterson, Esq.**<br>**Beeson Tayer & Bodine**<br>**1404 Franklin Street, Fifth Floor**<br>**Oakland, CA 94612**<br>**Tel: (510) 625-9700**<br>**Fax: (510) 625-8275**<br><br>**Michael A. Dubin, Esq.**<br>**Hooper, Lundy & Bookman, Inc.**<br>**575 Market Street, Suite 300**<br>**San Francisco, CA 94105** | **James Wold, Esq.**<br>**Wold Law Group**<br>**2455 Mission Street**<br>**San Marino, CA 91108** |

(___) **BY FEDERAL EXPRESS**: I placed a true copy thereof in a sealed Federal Express overnight envelope. The overnight envelope was taken to the Federal Express drop off located at 1100 Larkspur Landing Circle, Larkspur, California, and was addressed as noted above:

(___) **BY PERSONAL SERVICE**: I placed a true copy thereof in a sealed envelope, and caused such envelope to be delivered by hand to the addressee(s) noted above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed **February 15, 2008**, Larkspur, California.

_____
Shawn P. Gordon

H:\Docs\TDIC\7356\POS\pos opposition to mtn remand 02 15 08.wpd