ARTHUR W. CURLEY, BAR NO. 60902
BERNADETTE BANTLY, BAR NO. 124659
MEGHAN E. OLIVERI, BAR NO. 236107
BRADLEY, CURLEY, ASIANO,
BARRABEE & GALE, P.C.
1100 Larkspur Landing Circle, Suite 200
Larkspur, California 94939
Telephone: (415) 464-8888
Facsimile: (415) 464-8887

Attorneys for Defendant
BHARAT RAKSHAK, DDS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TRUSTEES OF THE TRI-COUNTIES WELFARE TRUST FUND and PROFESSIONAL GROUP ADMINISTRATORS, INC., a corporation,<br><br>Plaintiffs,<br><br>v.<br><br>BAHRAT RAKSHAK, DDS, a professional dental corporation, d/b/a RODEO DENTAL GROUP; LYNNE SIMMS, D.D.S., a professional dental corporation, d/b/a RODEO DENTAL GROUP; JESSICA HUANTE, individually; BAHRAT RAKSHAK, individually; LYNNE SIMMS, individually; and DOES 1 through 15, inclusive,<br><br>Defendants. | No. **C-07-06332 RMW**<br><br>**DECLARATION OF BHARAT RAKSHAK, DDS IN SUPPORT OF OPPOSITION TO MOTION TO REMAND**<br><br>Hearing Date: March 14, 2008<br>Hearing Time: 9:00 a.m.<br>Courtroom: Courtroom 6, 4th Floor<br>Judge: Hon. Ronald M. Whyte |

I, BHARAT RAKSHAK, DDS, hereby declare:

1. I am a defendant in the above-captioned matter. The facts stated herein are of my own personal knowledge and are true and correct. If called as a witness I could and would competently testify thereto.

2. Attached hereto as Exhibit A is a true and correct copy of the Collective



BRADLEY, CURLEY, ASIANO, BARRABEE & GALE, P.C.
1100 Larkspur Landing Circle, Suite 200
Larkspur, CA 94939
TEL (415) 464-8888
FAX (415) 464-8887

Bargaining Agreement between Rodeo Dental Group and Teamsters Local 890.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on this 14th day of February, 2008 in Salinas, California.

By: ______________________
BHARAT RAKSHAK, DDS

H:\Docs\TDIC\2356\P\decl of def in support of opp to motion to remand.wpd

BRADLEY, CURLEY, ASIANO, BARRABEE & GALE, P.C.
1100 Larkspur Landing Circle, Suite 200
Larkspur, CA 94939
TEL (415) 464-8888
FAX (415) 464-8887

# EXHIBIT A

# General Teamsters, Warehousemen and Helpers Union, Local No. 890

**AFFILIATIONS**
International Brotherhood of Teamsters
Joint Council of Teamsters, No 7
All National Trade Divisions

**Franklin L. Gallegos**, *President*
(831) 424-5743 FAX (831) 424-2091
207 North Sanborn Road
Salinas, California 93905-2299

October 4, 2006

Rodeo Dental
1070 N. Davis Road, Suite A
Salinas, CA 93907

Gentlemen:

Local No. 890, International Brotherhood of Teamsters, pursuant to the Collective Bargaining Agreement covering all classifications listed in the linen agreement, effective the 1st day of March 2003, between you and said Local 890, together with any or all agreements supplemental thereto, does hereby notify you and submits its desire in writing to you to revise or change the terms or conditions of said agreement, together with any or all agreements supplemental thereto, as of **February 28, 2007.** .

The Union is desirous of meeting with you at an early date for the purpose of negotiating such modifications to the agreement to become effective **March 1, 2007.** Please contact the undersigned so that a time and place for such a meeting may be arranged..

Sincerely,

Franklin L. Gallegos
President

FLG/mil

Certified Mail 7005 1159 0002 5921 3215
Return Receipt Requested

***Our Unity Makes Us Strong -- Nuestra Unidad Hace la Fuerza***

## TABLE OF CONTENTS


| Article | Subject | Page |
|---|---|---|
| Article 1 | Parties | 1 |
| Article 2 | Covered Employees | 1 |
| Article 3 | Single Bargaining Unit | 1 |
| Article 4 | Management Rights | 2 |
| Article 5 | Union Security | 2 |
| Article 6 | Subcontracting | 4 |
| Article 7 | Wages and Working Conditions | 4 |
| Article 8 | Per Diem | 5 |
| Article 9 | Physical or Eye Examination | 6 |
| Article 10 | No Rate Reductions | 6 |
| Article 11 | Hours | 6 |
| Article 12 | Lunch Hour & Breaks | 6 |
| Article 13 | House Rules | 7 |
| Article 14 | Seniority | 7 |
| Article 15 | Savings and Modification | 8 |
| Article 16 | New or Changed Operations | 9 |
| Article 17 | Successor Clause | 9 |
| Article 18 | Vacations | 9 |
| Article 19 | Holidays | 10 |
| Article 20 | Leaves of Absence | 11 |
| Article 21 | Funeral Leave | 14 |
| Article 22 | Jury Duty | 14 |
| Article 23 | No Strike – No Lockout | 14 |
| Article 24 | Health & Welfare, Major Medical & Dental | 15 |
| Article 25 | Paid Sick Leave | 16 |
| Article 26 | Grievance and Arbitration Procedure | 16 |
| Article 27 | Discipline & Discharge | 17 |
| Article 28 | Delinquencies | 18 |
| Article 29 | Safety | 18 |
| Article 30 | Duration of Agreement | 19 |
| | Signatures | 19 |
| Exhibit A | Employers Initially Covered | 21 |
| Exhibit B | Safety Rules & Procedures | 22 |
| Exhibit C | Medical Benefits Plan Description | 23 |

COLLECTIVE BARGAINING AGREEMENT 3/1/03

## ARTICLE 1 – PARTIES

1.1 This Agreement is between General Teamsters, Warehousemen and Helpers Union Local 890, IBT, AFL-CIO, and General Teamsters, Cannery, Warehouse Workers and Food Processors, Local 912, IBT, AFL-CIO, hereinafter referred to as the "Union", and the employers named in Exhibit A, attached hereto, and such other Employers who may during the term of this agreement become signatories thereto, hereinafter referred to as the "Employer". In the event an Employer signs this agreement after its effective date, this agreement shall become effective for that Employer and its covered employees effective the date of signing by the Employer or such other prior date as the parties may designate. All Employers signatories to this Agreement hereby recognize the Union as the representative for purposes of collective bargaining of all employees working in classifications covered by this Agreement and any supplemental agreements or Letters of Understanding.

## ARTICLE 2 – COVERED EMPLOYEES

This Agreement shall cover all of the following employees of each Employer:

1. Receptionists, office workers, secretaries, billing and administrative employees.
2. Professional and Technical employees, when such employees have by majority vote decided to be in the same unit as non-professional and non-technical employees.
3. Leadpersons and coordinators who have no independent authority to hire or fire employees covered by this agreement.
4. Such other employees as the parties agree may be covered, in any Letter of Understanding or Supplemental Agreements that the individual Employers may have executed, or will execute.

## ARTICLE 3 - SINGLE BARGAINING UNIT

The employees covered by this Agreement shall constitute one bargaining unit. It is also understood that the various Supplemental Agreements and letters of understanding hereto may have different expiration dates. The Employers acknowledge that they are part of a multi-employer collective bargaining unit. Any Employer may withdraw from the multi-employer collective bargaining unit by giving written notice of intention to withdraw 90 days prior to the expiration of this Agreement or prior to the first meeting between the Employers and the Union for renegotiations of this Agreement, which ever occurs first.

## ARTICLE 4 – MANAGEMENT RIGHTS

4.1 The Employer shall have the exclusive right to manage and direct the workforce as management deems appropriate, except as specifically limited by specific provisions of this agreement, or any supplemental agreements or letter of understanding. The Employer shall continue to have all sole and exclusive rights customarily reserved to management, including the right to hire, promote, suspend, discipline, transfer, or discharge for proper cause; the right to relieve employees from duty because of lack of work or other proper reasons; the right to schedule operations, shifts, and all hours of work; the right to assign work and require overtime work; the right to select supervisory personnel and control their conditions of employment; the right to establish rules pertaining to the Employer's operations and permissible conduct of employees. The Employer shall have the sole right to decide its processes, types of equipment to be used, types and quantities of work product, quality of work product, quantity and quality of work required, prices of products and/or services, as well as methods of selling and distribution of products and services. The Employer also retains the right to close all or a portion of its operations covered by this Agreement, or to sell, relocate, transfer work, or in any other way dispose of or alter such operations and the work performed.

4.2 The above-mentioned management rights are not to be interpreted as being all-inclusive, but merely the type of rights which belong to and are reserved to management. It is understood that any of the rights, power or authority that the Employer had prior to entering into this Agreement, are retained by the Employer, except as specifically abridged or modified by this Agreement.

## ARTICLE 5 - UNION SECURITY

5.1 It shall be a condition of employment that all employees of the Employer covered by this Agreement shall remain union members. Those who are not members on the effective date of this Agreement shall, by the thirtieth (30th) calendar day following the effective date of this Agreement, become and thereafter remain members of the Union. It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective date shall, on the thirtieth (30th) calendar day following the beginning of such employment, become and thereafter remain members of the Union.

5.2 The Employer shall furnish employees at the time of hire membership applications and dues check-off authorization forms as provided by the Union. An employee who fails to become a member of the Union or whose membership in the Union is terminated because of failure to tender the initiation fees, periodic dues, or assessments uniformly required by the Union, shall 14 days following written request by the Union to the Employer, be discharged and shall not be re-employed until the Union notifies the Employer in writing that the employee has paid such dues and initiation fees.

5.3 When the Employer hires a new employee under the terms of this Agreement it shall give the Union the following information at the time the employer's name is placed on the payroll record: the employee's name, address, phone number, social security number, date employed and job classification of the employee.

5.4 The Employer, for all employees who shall so authorize in writing, shall deduct from the first pay period of each month their Union membership dues, uniformly applied assessments and initiation fees for the current month and shall remit the same to the Union by the tenth day of each month.

5.7 The Employer shall not discriminate in regard to hire or tenure of employment, or any term or condition of employment, to encourage or discourage membership in any labor organization. Neither the Union nor the Employer will discriminate against an applicant or employee in any manner prohibited by law.

5.8 Authorized agents of the Union after notification and identification to the supervisor in charge shall have the right to visit employees where the Employer is conducting operations at all reasonable times and places, to conduct legitimate Union business; however, they shall not interfere with or interrupt operations. The Union shall notify the Employer of the names of all its authorized agents.

5.9 The Representative of the Union shall have access to time sheets, work production or other records that pertain to a worker's compensation, which may be necessary to resolve a grievance brought on behalf of such worker or workers.

5.10 The Employer will provide bulletin boards for use by the Union placed at such central locations as shall be mutually agreed, upon which the Union may post notices of Union business.

5.11 All vacancies in all positions covered by this Agreement shall be first offered by seniority to qualified unit employees covered under this contract. If current employees decline the offer, the Employer shall immediately notify the Union of the vacancy and shall then be free to hire from any source.

5.12 The Employer will recognize one (1) Shop Steward and one (1) alternate duly authorized by the Union as the on-the-job representative of unit employees. The Union will supply the Employer a list of Union Stewards, and the Employer will provide this information to each supervisor having authority over unit employees. The authority of any Shop Steward(s) will not exceed those legally afforded them under the National Labor Relations Act, as amended. Recognizing the mutual benefit of resolving problems at the lowest level, employees having a complaint must first discuss the matter with their Shop Steward and Supervisor. Reasonable and necessary time during work hours will be granted to Stewards, without loss of pay, to carry out their responsibilities to the employees in the unit, and will not unreasonably interfere with assigned duties. A steward must inform the Lead/Supervisor of the need to have time to carry out his responsibilities to the employees in the unit.

## ARTICLE 6 – SUBCONTRACTING

For the purpose of preserving work and job opportunities for the employees covered by this Agreement, the Employer agrees that there shall be no subcontracting of work covered by this Agreement. This clause shall not apply if (1) the Employer does not have qualified employees to perform the work and such subcontracting is with an Employer signatory to this Agreement, or (2) the Employer cannot obtain the specialized equipment to perform the work, or (3) the Employer does not have the employees to operate such specialized equipment or perform specialized work. The Employer shall not use independent contractors for the purpose of defeating seniority rights provided in this Agreement. Evidence of overlapping ownership or double-breasting shall create a presumption that the Employer is in violation of this Article.

## ARTICLE 7- WAGES AND WORKING CONDITIONS

7.1 All employees employed in classifications listed in Article 2 of this agreement shall receive wage increases of not less than three percent (3%) on January 1 of each year. Employees employed in classifications not specified in Article 2 of this agreement shall be paid the wages and benefits specified in Supplemental Agreements or Letters of Understanding which shall be negotiated promptly upon signing of this Agreement.

7.2 All time worked in excess of eight (8) hours per day or forty (40) hours per week shall be paid for at the rate of time and one half.

7.3 All employees shall be paid weekly.

7.4 All hours worked on a Sunday shall be paid at the rate of one and one half times the regular rate of pay.

7.5 **Call Time:** Any employee commencing work shall be guaranteed a minimum of four (4) consecutive hours per day. In the event an employee is ordered to report for work and on arrival is not put to work, said employee shall be given four (4) hours pay unless the Employer has made a timely good faith effort to notify the employee not to report by calling the phone number which must be provided by the employee. For any hours worked in excess of four (4) hours, the employee shall be compensated for actual hours worked.

7.6 Section 7.5 of this Article shall not apply if work covered by this Agreement is delayed or cannot be carried out because of a natural disaster, a loss of public utility services, or other unforeseen causes beyond the control of the Employer.

7.7 **Emergency Call Back:** If an employee who has completed his or her normal shift for the day is called back to work from home, he or she, upon reporting, shall receive a minimum of two hours work at the overtime rate, or a minimum of two hours pay at the overtime rate.

7.8 **Call In**: ; Any employee who is called in to perform emergency work on Sunday or a holiday shall receive a minimum of four (4) hours of work or pay at the applicable rate, provided he/she performs all emergency work then and there required to meet the Employer's obligations.

7.9 **Night Shift Premium**. Twenty-five cents ($.25) per hour shall be paid in addition to the basic classification for all work performed after the first shift. Overtime shall not apply to this premium. Any shift starting on or after 3 p.m., or before 4:00 a.m., shall be considered a night shift. This paragraph does not apply to Sunday whereby all hours worked are paid at the overtime rate. A first shift person whose first shift hours continue into the period designated as a night shift will not be eligible for shift premiums in that the employee will be on overtime.

7.10 When agreed to in writing by both the individual Employer and the individual employee, an Employer may substitute one and one-half hours of paid comp time in lieu of paying an hour of overtime.

7.11 When an employer requires a uniform the Employer shall furnish such uniform. If uniforms are regularly in the normal course of work contaminated by blood or chemical products, the employer shall be responsible for laundering the uniforms. To receive a clean uniform, or upon request of the Employer, the uniforms provided must be turned in, reasonable wear and tear excepted, or the replacement cost of any uniforms not returned must be paid by the employee or the cost may be deducted from the employee's wages. Employees will execute any necessary payroll deduction forms.

## ARTICLE 8 – PER DIEM

8.1 Any seniority employee who is required by the Employer to travel outside of Monterey County overnight, either for work or training or educational purposes, shall receive per diem living expenses at a daily rate of fifty dollars ($50.00), in addition to any other compensation provided for in this Agreement.

8.2 The employer shall be responsible for travel and hotel costs.

8.3 Per diem living expenses and travel expenses as provided in 8.1 and 8.2 shall be paid to the employees by separate check. Travel and hotel expenses shall be paid in advance of the required travel. Per diem living expenses shall be paid at least weekly, but may be paid at the same time as delivery of the employee's paycheck.

## ARTICLE 9 – PHYSICAL OR EYE EXAMINATION

The employer may elect to have employees take a physical or eye examination as directed by the Employer. The cost of the examination will be paid for by the employer. The employer shall pay the cost of any required physical examination for the employee to maintain any work-related license. The selection of the physician shall be made from a panel of three doctors submitted by the employer and the selection of the doctor to give the physical shall be the employee's choice.

## ARTICLE 10 – NO RATE REDUCTIONS

No employee shall suffer any reduction in rates of pay by reason of the execution of this Agreement. Any wages or benefits superior to those specified in this Agreement shall remain in full force and effect. Any wages or benefits superior to those contained in this Agreement which are contained in any Supplemental Agreement, Letter of Understanding, or prior existing contract signed prior to the effective date of this Agreement, shall remain in full force and effect for the term of this Agreement, unless or until they are surpassed by the terms of this Agreement.

## ARTICLE 11 – HOURS

11.1 When an employer has not established a fixed schedule the Employer shall post the schedule for the next workday by the end of each workday.

11.2 The employer may rescind or amend the schedule by actual notification to the employee prior to the time the employee was scheduled to report for work.

## ARTICLE 12 – LUNCH HOUR AND BREAKS

12.1 All employees covered under the terms of this Agreement shall be allowed a one (1) hour break in which to eat lunch at approximately the middle of their regular eight (8) hour shift, but in any case shall not be required to work in excess of five (5) hours without such lunch break. Employees shall be allowed a second lunch break if they have worked more than five (5) hours since their first lunch break. When required to perform any work during his/her lunch break, the employee will be paid for the entire lunch period.

12.2 Rest periods will be provided to employees at the rate of fifteen (15) minutes in the middle of every four (4) hours. The Employer shall, at a minimum, follow all State and Federal regulations regarding breaks and lunch times.

12.3 Thirty (30) minute lunch breaks may be established by mutual agreement between the Employer and the employee.

12.4 Employees will not take lunchtime while customers or clients are waiting unless so directed by the employer.

## ARTICLE 13 – HOUSE RULES

13.1 In the event the Employer establishes or changes Employer house rules; the Employer shall deliver a copy thereof to the Union within a reasonable time prior to the effective date of such rules.

13.2 Any grievances or disputes regarding house rules or the application thereof shall be referred to the Grievance Section of this contract.

## ARTICLE 14 – SENIORITY

14.1 A newly hired employee shall work under the provisions of this Agreement as a probationary employee for thirty (30) days. Probationary employees shall become regular seniority employees upon working a total of thirty (30) days during any ninety (90) day period. There shall be no responsibility for rehiring temporary employees if they are laid off prior to obtaining seniority.

14.2 Seniority shall be broken for the following reasons:

1. Voluntary quitting;
2. Discharge for just cause;
3. Failure to report for work under the terms of the seniority provision for more than three (3) days without notifying the Employer.

14.3 The Employer will apply Seniority and qualifications in its everyday operation relating to promotion, transfer, assignment of work, hours of work, bidding, overtime, holidays, vacation, layoff and re-call from lay-off, and all other terms and conditions of employment. When a permanent vacancy occurs in any classification covered by this Agreement, the Employer shall notify the Union and post a notice of the vacancy, together with a bid sheet for a period of five days. At the end of such five (5) day period, the most senior qualified employee signing the bid sheet shall be awarded the job. The Employer shall have the right to temporarily fill the permanent vacancy for the five (5) day period. The Employer will not arbitrarily disqualify any employee from bidding on a job and the employee bidding on a job shall be given an on-the-job opportunity to demonstrate his capability to perform the work. The Employer shall notify the Union prior to removing any employee for failing to demonstrate his capability to perform the work.

14.4 The Employer shall post the seniority list on the bulletin board. Copy of such list shall be mailed or faxed to the Local Union office. Seniority shall be cumulative from the beginning date of the employment of each employee.

14.5 Once an employee establishes seniority in a unit classification and is temporarily reassigned to a lower-paid classification. the employee will continue to be compensated at the higher wage scale. Employees who perform work in a higher classification will be paid the highest wage rate of the classification worked in for all hours worked.

14.6 All grievances relating to seniority shall be made in writing to the employer or its representative within fourteen (14) calendar days of the employer's action, or discovery thereof, and any employee failing to do so shall waive his right to bring such matters as a grievance.

14.7 The Employer shall, at time of hire, obtain and verify I-9 documentation as required by law. Thereafter, however, the Employer may not require employees to re-establish their right to work unless the Employer has reason to believe a change has occurred in the documentation, or unless required by INS. In the event the employer receives any correspondence from the Social Security Administration or EDD which only puts in question the accuracy of a seniority employee's Social Security number, the employer shall immediately provide the employee and the union with a copy of the correspondence.

## ARTICLE 15 - SAVINGS AND MODIFICATION

15.1 In the event that any State or Federal agency or Court rules any Article, Section or paragraph of this Agreement to be in violation of a State or Federal law or regulation, only that portion of the Agreement shall be void, and the remainder of the Agreement shall remain in full force and effect.

15.2 No provision or term of this Agreement may be amended, modified, changed, altered or waived except by written document executed by the parties.

15.3 It is understood and agreed that no employee shall be asked or required to make any written or verbal individual agreement, and that any individual contract that may be made with any member of the Union shall be considered a violation of this Agreement.

15.4 In the event that Federal or State laws or regulations provide for rates of pay or benefits more favorable to the employees than the rates and benefits specified in this Agreement, then the laws or regulations shall prevail.

## ARTICLE 16 – NEW OR CHANGED OPERATIONS

16.1 In the event the Employer hereafter establishes within the bargaining unit a new [illegible] of pay provided in this Agreement and shall notify the Union before such rate is put into effect of the amount of the rate and of the operation and classification to which such rate applies. Upon written request made by the Union within thirty (30) calendar days after receipt of such notice, the Employer will meet and confer with the Union to study the matter for thirty (30) days or such longer period as the Employer and the Union agree in writing is appropriate. Any unresolved dispute subject to a grievance which shall be presented directly to the arbitration step of the grievance procedure within ten (10) days of the conclusion of the meeting period of this Article.

16.2 Work shall continue at the rate and under the conditions determined by the [illegible] the new job does not bear a [illegible] relationship to other jobs at substantially the same rate of pay within the bargaining unit, subject to equitable considerations, adjustments pursuant to arbitration shall be made effective from the date of filing of the written grievance requesting arbitration. The arbitrator's authority shall be limited to determining the proper rate relative to existing rates set forth within the attached wage rate exhibits of this Agreement.

## ARTICLE 17 – SUCCESSOR CLAUSE

17.1 This Agreement shall be binding upon and inure to the benefit of the parties and their successors and assigns. Successors and assigns for the purpose of this article applies to a sale or other transfer of the business and ownership of the Employer. A sale of assets, either in whole or in part, which does not involve continuation of the workers of the Employer to operate such sold or transferred business or assets, shall not be subject to the [illegible]

## ARTICLE 18 – VACATIONS

18.1 Employees with one year or more seniority at the beginning of any calendar year shall receive from the Employer vacation pay, based on the following schedule:

| | |
|---|---|
| Two years of service | two weeks paid vacation |
| Six years of service | three weeks paid vacation |
| Twelve years of service | four weeks paid vacation |



18.2 **Pro-rated Vacations** An employee who quits, dies, retires, is laid off, or who is terminated, will receive pro-rated vacation for all accrued, unused vacation upon severance of employment.

18.3 **Vacation Bid** Vacation schedules will be posted on the first (1st) work day each October for the purpose of vacation bid selection in seniority order. Employees will be allowed to bid vacation in consecutive full week increments or split vacation entitlement in full-week increments until all weeks of entitlement are selected. After the bidding has closed, any open weeks or days may be requested on a first come, first served basis. Bid vacations may also be switched to another open week, with approval from the Employer.

18.4 Vacations may be taken in increments of not less than four (4) hours. The number of employees who may be absent on vacation at any one time will be at the Employer's discretion. The Employer will endeavor to permit as many personnel to be off at one time if it will not severely affect the operations of the Employer. There will be no other vacation restrictions. The Employer will maintain a calendar that is accessible to the employees showing, the number of people off on vacation for any given day, week and month. The Employer will reimburse employees for any out of pocket loss sustained in the event the Employer requires an employee to cancel his scheduled vacation.

## ARTICLE 19 - HOLIDAYS

19.1 Holiday pay is defined as eight (8) hours pay which is payable at the employee's standard straight-time rate of pay including shift differentials. The eight (8) hours pay will be considered as time worked for all purposes of this Agreement. The following holidays will be observed:

New Year's Day
Martin Luther King's Birthday
President's Day
Good Friday
Memorial Day
Independence Day
Labor Day
Columbus Day
Veteran's Day
Thanksgiving Day
Christmas Day

19.2 When a holiday falls on Sunday, the day designated by State or Federal proclamation shall be observed as a holiday.

who worked any time during the fourteen (14) calendar days before the holiday.

20.1 Leaves of absence under this Article shall be without pay, except as specifically set forth elsewhere in this Agreement. Seniority shall accumulated during the leave of absence, and upon returning to work the employee shall be reinstated without loss of seniority to his/her classification at the current scale of wages. Failure to report to work at the end of the approved leave of absence or accepting employment with another employer during a leave shall terminate seniority. All leaves of absence must be approved in writing by the Employer in advance. Whenever the Employer requires a leave of absence request to be in writing, the Employer shall provide pre-printed forms to requesting employees. Such forms may be completed in English or Spanish with a copy to the Union and to the disciplinary action including immediate termination.

20.2 **Medical Leave.** A medical leave of absence without pay shall be granted to those employees who have worked for the Employer at least 1250 hours in the twelve months preceding the leave, and who have worked for the Employer more than a year and who are of absence shall be granted for the period of the illness or disability but in no case shall the Employer be required to extend medical benefits for a period exceeding twelve weeks within a twelve month period

20.3 A request for a medical leave of absence must be submitted in writing prior to the absence; (ii) the estimated duration of the leave of absence and the approximate beginning and ending dates; and (iii) a physician's certificate indicating "a serious health condition" that causes the employee to be unable to perform the functions of the job and estimated duration of the disability.

periodic updates to the Employer, including updated certification supporting the need for continuing the leave of absence, the expected date of return, and his/her continued intent to return to work upon expiration of the leave. Employees are also required to immediately notify the Employer of any need to change the duration of the leave of absence. Changes in the duration must be supported by certification from the health care provider.

20.5 Before returning to work following a medical leave of absence, the employee must submit to the office the attending physician's verification stating the employee's ability to return to work and the date that he/she is able to return. Any restrictions affecting the physician. If the Employer has a reasonable cause to believe that the worker is not able to

continue or resume working, the Employer may require that the worker be examined by the Employer's doctor at the Employer's expense.

**20.6 Maternity Leave.** A maternity leave of absence of up to a maximum of four (4) months without pay shall be granted to any worker who is disabled and unable to perform the functions of the job for a pregnancy-related reason. Such request shall indicate the date requested for the leave to commence and the anticipated return date and must be supported by a physician's statement which establishes a disability related to pregnancy that causes the employee to be unable to perform the functions of the job and the anticipated duration of the disability.

20.7 It is the responsibility of an employee on an approved pregnancy leave to provide periodic updates to the Employer including: updated certification supporting the need for continuing the leave of absence, the expected date of return, and her continued intent to return to work upon expiration of the leave. Employees are also required to immediately notify the Employer of any need to change the duration of the leave of absence. Changes in the duration must be supported by certification from the health care provider.

20.8 Before returning to work following a pregnancy leave, the employee must submit to the office the attending physician's verification stating the employee's ability to return to work and the date that she is able to return. Any restrictions affecting the employee's ability to handle her job responsibilities must be indicated by the attending physician. If the Employer has a reasonable cause to believe that the worker is not able to continue or resume working, the Employer may require that the worker be examined by the Employer's doctor at the Employer's expense.

20.9 If modified work is recommended by the attending physician and requested by the employee, the Employer shall accommodate the pregnant employee by transferring her to a modified position where available. However, no reassignment will be required if it will cause the layoff of another worker and other workers shall not be required to change their current job assignments without their consent.

**20.10 Leave to take care of newborn and/or adopted child:** Any employee who has worked for the Employer at least 1250 hours in the twelve (12) months preceding the leave, and who has worked for the Employer more than a year, shall be entitled to take an unpaid leave of absence without pay to care for his/her newborn child or a child placed with the employee for adoption or foster care. A written request must be submitted at least one (1) month in advance and must be supported by documentation establishing proof of birth or adoption by employee. In order to take a leave of absence under (j) it must be initiated within the first twelve (12) months immediately following the birth of the child or the placement of the child in the employee's care for foster care or following the adoption. The maximum amount of time allowed for leave under (j) is twelve (12) weeks within a twelve month period.

20.11 **Family Medical Leave** An employee who has worked for the Employer at least 1250 hours in the twelve (12) months preceding the leave, and who has worked for the Employer more than a year is entitled to take a leave of absence without pay to care for his/her child, spouse, or parent with a "serious health condition". A written request must [illegible] days, the employee must provide as much advance notice as is practicable.

20.12 Certification from a health care provider establishing the "Serious health condition of the child, parent or spouse", that employee is needed to "take care of" the seriously ill child, parent or spouse, and the estimated duration of the condition, must be provided to the Employer upon requesting the leave and/or as soon thereafter as circumstances permit and is required in order to obtain approval of the leave of absence. Failure to provide the required certification in a timely manner is grounds for denying the leave.

20.13 It is the responsibility of the employee on approved leave of absence to provide periodic updates to the Employer including: an updated certification supporting the need for continuing the leave of absence, the expected date of return, and his/her continued intent to return to work upon expiration of the leave. Employees are also required to immediately notify the Employer of any need to change the duration of the leave of absence. Changes in the duration must be supported by certification. [illegible] taken under this section is twelve weeks in a twelve month period.

20.14 **Personal Leaves of Absence**

1. Leaves of absence not to exceed one (1) month without pay may be granted to [illegible] applying for and receiving approval from the Employer, upon a showing of necessity satisfactory to the Employer.

2. Requests for personal leave of absence will be considered on the basis of the employee's seniority, job classification, the reason for the request, whether other employees are already out on a leave, and the expected impact of the leave on the Employer's operations. Leaves are granted at the discretion of the management. If all requests cannot be granted, the Employer agrees to give preference to the more senior [illegible] the leave period. subject to final approval until three (3) weeks before

20.15 Leaves of absence shall be granted or extended upon illness or injury of any employee substantiated by a doctor's certificate or other adequate proof of illness. Prior to returning any employee to his job following any absence for illness or injury, the Employer may require a doctor's certification of his medical fitness to perform the work involved.

20.16 An employee's appointment or election to conduct Union business shall be deemed good and sufficient reason for obtaining a leave of absence. Such employee shall be given,

upon written notice from the Union to the Employer, a leave of absence not to exceed one (1) year, which shall be automatically extended yearly thereafter provided the employee shall be continuously conducting Union business. Not more than one (1) employee shall be on a leave of absence under this section from any one Employer at any one time.

**20.17** Leaves of absence pursuant to sub-sections 20.2 Medical Leave, 20.6 Maternity Leave, 20.10 Care of Newborn/Adopted Child, and 20.11 Family Medical Leave, shall be counted as hours worked for purposes of insurance eligibility under Article 24.

**20.18** Leaves of Absence pursuant to Sections 20.14, 20.15, and 20.16 shall not be counted toward the accumulation of any benefits under this agreement, except for the accumulation of seniority.

## ARTICLE 21 - FUNERAL LEAVE

**21.1** An employee shall be granted a funeral leave for a period of up to four (4) days, at eight (8) hours straight time rate of pay, for attendance at a funeral of the employee's spouse, children, brother, sister, brother-in-law, sister-in-law, current stepchildren, stepfather, stepmother, or of the mother, father or grandparents of either the spouse or the employee.

**21.2** Pay for funeral leave shall be granted on any day when the Employer has any employees scheduled to work.

## ARTICLE 22 - JURY DUTY

When an employee is first notified of a call to jury duty, he shall immediately inform the employer of such notification. If an employee is called to jury duty, he shall be paid the difference between eight (8) hours straight time rate of pay and the amount received for jury duty, for all days called to jury duty, up to maximum of fifteen (15) days of jury duty.

## ARTICLE 23 - NO STRIKE, NO LOCKOUT

**23.1** It is agreed by the Union and the Employer that there shall be no strikes or lockouts during the life of this Agreement, and that all grievances shall be referred to Arbitration or Mediation as provided in this Agreement. This section shall not apply if the other party fails to adhere to a decision of an arbitrator, or refuses to process a grievance through the Grievance Procedure.

23.2 It shall not be a violation of this Agreement or cause for discharge or disciplinary action, in the event an employee refuses to cross or work behind a picket line set up pursuant to a lawful primary labor dispute sanctioned by the Executive Board of Teamsters Local 890, and/or the Teamsters Joint Council covering the area.

## ARTICLE 24 – HEALTH AND WELFARE, MAJOR MEDICAL AND DENTAL

24.1 The Employer agrees to maintain a health and welfare plan in Tri Counties Welfare Trust Fund, or other plan, providing benefits, terms and condition not less than the coverage presently provided by Plan 4 of the Tri Counties Welfare Trust Fund with vision, dental, $10,000 life insurance, and $10,000 AD&D benefits. A description of the benefits provided under Plan 4 is attached as **Exhibit C**. Payment of premium shall be made by the 10th of each current month during the period of this Agreement.

24.2 When a seniority employee has maintained his seniority for at least one year with the Employer, he shall be deemed an eligible employee in any month in which work was performed and shall qualify for health and welfare coverage for the following month.

24.3 A non-seniority employee or an employee who has not maintained his seniority for at least one (1) year, shall be eligible upon having worked eighty (80) hours for the Employer as disclosed by the payroll periods in the preceding month, and eighty (80) hours in the current month. If an employee is qualified on either method of computation, the Employer shall pay such employee's health and welfare premiums for said month and the following month.

24.4 Each Employer shall provide to the Union a copy each month of the eligible employees, together with a copy of the transmittal to any fund other than the aforementioned Tri Counties Welfare Trust Fund, and post a copy on the Employer bulletin board.

24.5 Time granted an employee for a vacation shall be considered as time worked and taken into consideration when determining hours of work for the purpose of payment of health and welfare premium by the Employer. Such paid vacation hours shall be added consecutively to the actual hours of work, commencing with the day after termination of employment for the season.

24.6 Upon termination of employment, the employee may pay his own insurance premiums, at the group rate, for a period not to exceed ten (10) consecutive months. The first payment of premium by the employee must be paid by the tenth day of the first month following termination of employment for the season, unless the premium for that month is paid by the employer, in which case the first payment of premium by the employee must be made by the tenth of the next consecutive month. Thereafter, each payment must be made consecutively by the tenth of the month; provided the employer is not obligated to pay insurance for that month.

## ARTICLE 25 – PAID SICK LEAVE

**25.1** Full time employees shall be entitled to ten (10) days paid sick leave per year for bona fide illness. Sick leave shall be credited to the employees account in the amount of 6.7 hours per month. A doctor's certificate may be required for an illness of more than three days, or if there appears to be a pattern of abuse of the sick leave benefit. A two member committee shall be selected, one from the Union and one from the Employer, to resolve any questions or abuses regarding sick leaves. For the purposes of this paragraph only, employees hired on or after the 20th day of the month will be considered to be hired on the first day of the following month.

**25.2** Unused sick leave shall be cumulative to a maximum of thirty (30) days. Full time employees who use five (5) or less sick leave days per year will be paid that time not used as a bonus. The maximum bonus to be paid in one year shall be five (5) days, forty (40) hours. The bonus days will not be credited to the accumulated bank of sick leave. For purposes of the bonus calculation, the effective date for accumulating the bank of sick leave days will be December 1 of each year.

**25.3** Employees may use up to five (5) days of paid sick leave per year for Family Medical Leave days.

**25.4** Employees will use sick leave accumulated to date to pay for any time lost due to medical or dental appointments. Minimum time to be deducted shall be fifteen minutes; any time over fifteen minutes will be rounded up to one-half hour for accounting purposes.

## ARTICLE 26 - GRIEVANCE AND ARBITRATION PROCEDURE

**26.1** When a dispute arises, the employee or the Union Representative may first attempt to resolve the issue with the immediate supervisor or other designated representative of the Employer. If the issue remains unresolved the employee or Union shall submit a written grievance to the Employer, which shall include a statement of the facts of the case, the Article or Sections of the Agreement allegedly violated, and the remedy requested. Within ten (10) days of the grievance being filed in writing, the Employer and the Union shall meet and attempt to settle the grievance.

**26.2** If the grievance remains unresolved, the parties shall select an arbitrator. If the parties cannot agree on an arbitrator, a list of arbitrators will be requested from the Federal Mediation and Conciliation Service. After a toss of a coin to decide which party shall move first, the representative of the employer and the representative of the Union shall alternately strike one name from the list until one name remains and such person shall be arbitrator for the case. Cost of the services of the Arbitrator and all mutual facilities and services shall be shared equally by the parties. The parties may also use State Mediation Service. Pending the decision of the arbitrator or mediator, work shall be continued in accordance with the provisions of this contract.

26.3 In the event the Employer or Union fails to abide by the decision of the arbitrator, the other party shall be free to take whatever economic or legal action it may deem necessary, and any such action taken shall not be considered a violation of this Agreement.

26.4 Any claims for compensation shall be limited to a maximum of thirty (30) days retroactive from the date the claim is submitted to the Employer in writing. Any such grievance or claim in dispute not submitted within such time shall be waived, unless the Arbitrator for good cause accepts such submission, or unless either party has intentionally concealed the facts upon which the grievance, claim or dispute is based.

26.5 There shall be no retaliation or discrimination against an employee for filing a grievance .

26.6 In the event that the Union has a dispute, organizational problem, or other claim against an individual Employer bound by this Agreement, or any Supplemental Agreement thereto, or with an Employer which the Union is seeking to organize or with which it is seeking to negotiate a contract, and when the Union is entitled to or does strike or use any other action in connection therewith, the Union agrees that any such action shall be directed against that individual Employer and not against any other Employers bound by this Agreement or Supplemental Agreements hereto.

## ARTICLE 27 – DISCIPLINE AND DISCHARGE

27.1 The Employer shall have the sole right to discipline and discharge employees for just cause. No employee shall be disciplined or discharged except for just cause. The employer shall have the right to discharge any employee for insubordination, drunkenness, incompetence, failure to perform work as required, or failure to observe safety rules and regulations or employer's posted rules and regulations. However, any employee who feels that he has been unfairly discharged shall have the right, within ten (10) calendar days, to bring the matter as a Grievance. Failure to act in writing within ten (10) calendar days shall waive the grievance.

27.2 The Employer shall either at the time of discharge, or within seven (7) days after the discharge, furnish the employee with a written discharge notice stating the reason for the discharge, supervisor's name who discharged the employee, and the time and location of the offense. A copy of the discharge or termination notice shall be sent to the Union by fax or first class mail.

27.3 Tardies and unexcused absences more than one year old shall not be considered in determining the severity of discipline.

27.4 In matters of absences and tardies, the Employer shall implement a system of progressive discipline.

27.5 In any disciplinary case, the Employer shall not proceed with any disciplinary meeting unless the employee being disciplined is given the option of Union Representation by calling in his Union Representative, Shop Steward or designated representative.

27.6 Employer and the Union recognize that sexual harassment is a serious issue in society. They agree that sexual harassment of employees, co-workers, clients or customers can seriously damage the Employer's reputation in the community, and will not be tolerated. When sexual harassment is alleged, the accused employee will be counseled and warned, even if guilt is not proven. When overt sexual harassment of employees or clients is proven, disciplinary action up to and possibly including termination may be taken.

## ARTICLE 27 - DELINQUENCIES

28.1 Notwithstanding anything herein contained, the failure of any Employer signatory to this Agreement to make the necessary payments as provided in Article 4 (Union Security), and Article 24 (Health and Welfare) shall give the Union or the employees of any Employer the right to take any legal or economic action they see fit against the Employer to enforce compliance.

28.2 Whether or not such action is taken, the Employer shall be liable to the employees for any and all benefits under any of the aforementioned articles that the employees would have received if the Employer had not been delinquent in making the payments.

## ARTICLE 29 - SAFETY

29.1 The Employer shall abide by all applicable health and safety regulations regarding the employees covered by this Agreement, and no employee shall be disciplined for refusing to work under proven unsafe conditions which unsafe conditions would place the employee or employees or other persons involved in a position dangerous to their health or safety. Any unsafe conditions shall be reported to the Employer and such conditions shall be checked and signed by a representative of the Employer before the equipment or activity is put back to work.

29.2 The Parties shall meet and develop Safety Rules & Procedures, which may be incorporated into this Agreement as **Exhibit B**.

## ARTICLE 30 - DURATION OF AGREEMENT

This Agreement shall be effective March 1, 2003. It shall remain in effect for forty-eight (48) months from such date, and shall thereafter be automatically renewed from year to year, except as hereinafter set forth.

(a) On or before November 1, 2006, or on or before November 1, of any year thereafter, all employers covered by this agreement shall consult amongst themselves and designate a bargaining committee, Association, or representative. Such bargaining committee, Association, or representative shall then contact the Union and bargain for a successor agreement.

(b) On or before December 1, 2006, or on or before December 1, of any year thereafter, either the Union or the Employer or their representatives may give to the other a written notice of termination, whereupon this Agreement shall terminate on the following March 1.

(c) On or before December 1, 2006, or on or before December 1, of any year thereafter, either the Union or the Employer or their representatives may give to the other a written notice or request for modification, or alteration of, or amendment to this Agreement. When such notices are given, the party giving the same shall specify therein the particular modification or alteration of or amendment to the Contract desired. After such notice, it is the duty of the parties on or after such December 1, to bargain for the purpose of agreeing upon such modification, alteration or amendment. If this form of notice is given, then this Agreement shall be extended for one (1) additional year subject to whatever changes are agreed to by the parties.

IN WITNESS WHEREOF, the parties have duly executed this Agreement.

| EMPLOYERS | UNIONS |
|---|---|
| MONTEREY BAY LABOR COUNCIL | GENERAL TEAMSTERS, WAREHOUSEMEN AND HELPERS UNION LOCAL 890 |
| By: ______________ | By: [signature] |
| Date: ______________ | Date: MARCH 6, 2003 |

EMPLOYERS

SALINAS ACCIDENT & INJURY CENTER

By: ______________________

Date: 4-9-03

RODEO DENTAL GROUP

By: ______________________ Date: 3/6/03

BRIGHT NOW! DENTAL

By: ______________________ Date: ______________________

CENTER FOR COMMUNITY ADVOCACY
CENTRO DE ABOGACIA DE LA COMUNIDAD

By: ______________________ Date: 6-5-03

UNIONS

GENERAL TEAMSTERS, CANNERY, WAREHOUSE WORKERS AND FOOD PROCESSORS, LOCAL 912, IBT, AFL-CIO

By: ______________________

Date: ______________________

GREENFIELD MEMORIAL DISTRICT

By: [signature]

Date: 5/13/03

GENERAL TEAMSTERS, WAREHOUSEMEN AND HELPERS UNION LOCAL 890

By: [signature]

Date: 5/15/2003

ORGANIZACION EN CALIFORNIA DE LIDERES CAMPESINAS, INC.

By: [signature]

Date: 5/29/03

GENERAL TEAMSTERS, WAREHOUSEMEN AND HELPERS UNION LOCAL 890

By: [signature]

Date: 5/31/2003

DAVIS CHIROPRACTIC
Dr. Steven Davis

By: [signature]

Date: 7/22/03

GENERAL TEAMSTERS, WAREHOUSEMEN AND HELPERS UNION LOCAL 890

By: [signature]

Date: 7/22/2003

EMPLOYERS

CENTRAL COAST CITIZENSHIP PROJECT

By: [signature]

Date: 4/6/04

UNIONS

GENERAL TEAMSTERS, WAREHOUSEME AND HELPERS UNION LOCAL 890

By: [signature]

Date: 4/6/2004

## Letter of Understanding

1. This understanding is entered into by Teamsters Local 890 ("Union") and the Rodeo Dental Gropup ("Employer") in order to clarify and limit the terms of the Professional, Technical, Office, and Community Service Employees Agreement ("Agreement") as it applies to employees of the Employer.

2. *(re: Article 2)* The Employer agrees to recognize the Union as the representative of its receptionists, dental assistants, clerks, office workers, billing and administrative employees. Dentists, hygienists, the Back Office Supervisor and the Office manager are excluded. Temporary or part-time employees who work less than 138 hours per month shall not be included in the bargaining unit.

3. *(re: Article 5)* The Union agrees to defend and indemnify the Employer for any and all claims, demands, suits or other liability arising out of the Employer's acceptance and enforcement of Section 5.2 of the Agreement.

4. *(re: Article 5)* If it is necessary for a Union representative or officer to visit the Employer's premises for purposes of assuring that this Agreement is being enforced and confirming the standing of employees, he or she shall call a designated management representative before entering the facility. The Employer shall identify in writing the management representative. Permission to enter will not be unreasonably refused if as much notice as is reasonably possible under the circumstances is given. The Union representative shall whenever possible meet with employees in the employee lunch room during non-work time, and in no event shall Union business be conducted in the presence of patients. The Union's right to access shall not be abridged as long as it is exercised in an orderly and nondisruptive manner. Similarly, Union stewards shall not conduct Union business in the presence of patients, and shall not disrupt the Employer's business. The parties agree that Union Stewards shall not perform Union business on Employer-paid time, unless requested to do so by the Employer.

The following provision of Article 5.12 shall not be applicable to Employer: "**Reasonable and necessary time during work hours will be granted to Stewards, without loss of pay, to carry out their responsibilies to the employees in the unit, and will not unreasonably interferr with assigned duties.**"

5. *(re: Article 5)* Section 5.11 of the Agreement shall not apply to employees of the Employer.

6. *(re: Article 6)* Because there are currently no other dental offices under contract, the parties agree that the phrase "and such contracting is with an employer signatory to this Agreement" in Article 6, section (1), shall not apply to this Employer.

7. *(re. Article 7)* All bargaining unit employees shall receive wage increases of not less than three percent (3%) on January 1 of each year of the Agreement.

8. (re. Article 12.2) Article 12.2 shall be superceded by the following language. **Each employee shall receive a ten (10) minute rest period in the middle as much as is reasonably possible of every four (4) hours.**

9. *(re: Article 14)* Failure to timely return from an approved leave of absence may be cause for loss of all seniority. Such failure may be excused by the Employer because of unusual circumstances, and such excuse shall not be unreasonably withheld.

10. *(re: Article 14)* Sections 14.1 and 14.3 of the Agreement shall be superceded by the following language:

(a) The probationary period shall be the first six (6) months of employment. An employee may be discharged or disciplined for any reason during the probationary period and such discharge or discipline shall not be subject to the grievance procedure.

(b) In filling job vacancies within the bargaining unit, employees shall be given first consideration prior to the consideration of other applicants, provided the employee(s) appear to fully meet the attributes and qualifications desired for the position. Where attributes and qualifications are equal, the employee with the greatest seniority shall fill the vacancy. The Employer shall have sole discretion to determine and evaluate attributes and qualifications as long as the Employer's discretion is not capricious or arbitrary."

(c) "When a permanent vacancy occurs in any classification covered by this Agreement, Employer shall notify the Union and post a notice of vacancy for a period of five (5) days.

11. *(re: Article 17)* Article 17 of the Agreement shall not apply to employees of the Employer.

12. *(re: Article 18)* Section 18.1 of the Agreement shall not apply to employees of the Employer, rather vacation benefits shall accrue on the following basis:

| | |
|---|---|
| (a) Date of hire to 180 days | no vacation accrual |
| (b) 180 days to 1 year | 6.67 hours per month (40 hours paid vacation) |
| (c) 1 to 2 years of employment | 3.33 hours per month (40 hours paid vacation) |
| (d) 3 to 10 years of employment | 6.67 hours per month (80 hours paid vacation) |
| (e) 11 or more years of employment | 10 hours per month (120 hours paid vacation) |

Vacation accruals may not exceed double the employee's current annual entitlement. The Employer may establish additional rules regarding scheduling and implementation of vacation benefits.

13. *(re: Article 19)* Article 19 of the Agreement shall not apply to employees of the Employer, rather the Employer shall observe the following Holidays:



New Year' Thanksgiving Day
Memorial Day December 24

Independence DaChristmas Day
Labor Day

Any work performed on the above listed holidays shall be paid at a rate of two (2) times the regular rate of pay.

To be eligible for paid holidays, an employee must work the scheduled work days immediately before and after the paid holiday. Employees calling in sick or otherwise absent on the day before or after the holiday will not be paid for the holiday unless they have received advance approval to take vacation leave during this period.

Full-time regular employees are eligible after completing their six-months introductory period. Probationary, part-time and seasonal/temporary employees are ineligible for holiday benefits. All employees are ineligible for holiday benefits that accrue while on unpaid leave of absence.

14. *(re: Article 20)* The Parties recognize that because he has far less than 50 employees, the Employer has no legal obligation to comply with FMLA regulations. However, the parties agree to meet during April 2003 to discuss the extent to which the Employer is able to agree to the terms of "Leaves of Absence" Article 20 of the Agreement. Until an agreement is reached on this subject, the Employer's Handbook shall continue to apply on all matters related to this issue.

15. *(re: Article 21)* Employer shall provide two (2) days of paid funeral leave for funerals of all family members listed in Article 21 of the Agreement, except for in-laws.

16. *(re: Article 22)* Jury Duty pay as specified in Article 22 of the Agreement shall not apply to employees of the Employer. During May, 2004, the parties shall bargain regarding implementation of Article 22, Jury Duty.

17. *(re: Article 24)* Article 24 (Health & Welfare, Major Medical & Dental) of the Professional, Technical, Office, and Community Service Employees Agreement shall be implemented effective June 1, 2004. Either Tri Counties Plan 4, without Dental, or Plan 10, without Dental, may be implemented at that time. Until June 1, 2004, the Employer shall continue to provide the current level of benefits. The Employer shall continue to provide Dental benefits to employees as per past practice, and effective June 1, 2004, shall provide dental treatments to family members of employees at RDG special fees, less 40%. If total insurance premiums (excluding dental) exceed $450 per employee, the parties shall promptly meet and negotiate regarding benefit levels, alternative plans, and

other possibilities for reducing rates or cost containment. If total insurance premiums (excluding dental) exceed $450 per employee, the Employer and the employees shall equally split the excess amount. (ie: If the monthly rate is $500, the Employer shall pay $475 and the employee shall pay $25.)

18. *(re: Article 25)* Paid Sick Leave as specified in Article 25 of the Agreement shall not apply to employees of the Employer. Rather the following sick leave policy shall continue to apply:

(A.) **Eligibility.** All regular full-time employees are eligible for up to six (6) days' (48 hours) of sick leave per calendar year. Full-time regular employees start accruing sick leave benefits upon the successful completion of their six (6) months introductory period at the rate of four (4) hours per month and may accumulate up to a maximum of six (6) days (48 hours) of sick leave per calendar year.

Employees do not accrue sick leave during their introductory periods and new employees who are absent due to illness or disability during their introductory period of employment will not be compensated. Part-time and temporary employees are ineligible to earn or receive sick leave benefits.

(B.) **Use.** Sick leave may be taken for personal illness or disability, or to care for the illness or disability of an immediate family member; it may not be used for vacations or personal time off.

In order to receive earned sick pay during an absence, you must meet the following conditions:

(1) You must be unable to report to work for <u>at least two days or more</u> because of an extended personal illness or disability and/or to care for the illness of an immediate family member. In such event, the Company will pay sick pay for the second day of the absence and each subsequent day of the extended absence. The first day of an extended absence and/or an absence of one (1) day or less is not entitled to sick pay and shall be taken on a non-paid basis, and

(2) You must provide the Company with a physician's certificate verifying the illness and/or need to care for the immediate family member. Sick pay may be withheld if a satisfactory verification is not received; and

(3) You must call in and give the Company proper advance notice that you will not be able to report to work because of your illness and/or the illness of an immediate family member.

(4) Sick leave must be taken in minimum increments of four (4) hours. Any sick days in excess of the number of earned sick days will result in loss of pay in the current pay period for the sick day(s). The accounting and settling of sick leave days will appear on the pay stub of the current pay period.

(C.) **Pay In Lieu of Sick Leave (Well Pay)**
On December 31st of each year you will receive cash for any unused sick leave for the ending calendar year.
(D.) Notice to Company
You should notify your supervisor immediately if you intend to take time off, or if an immediate family member is ill. If you are taking time off for routine doctor or dental appointments, you should inform your supervisor at least three (3) days in advance of the date of the appointment. Doctor and dental appointments should be scheduled during non-working time whenever possible.

19. *(re: Article 27)* The Employer reserves the right to make and publish rules not inconsistent with the terms of this Agreement including progressive discipline. Violation of said rules can lead to discipline, up to and including discharge. Examples of good and sufficient cause for immediate termination include, but are not limited to the following: theft, the use, possession, and/or reporting to work under the influence of alcohol and/or controlled substance, falsification of any company records or forms, falsification of time records, gross insubordination, gross willful misconduct, violation of Employer's Policy Against Harassment, threats and/or acts of violenc, failure to perform work as required, or failure to observe safety rules and regulations or employer's posted rulesand regulations. Further the Employer shall have the right to determine in its sole discretion the appropriate form of discipline for such serious offenses. If the Employer chooses to impose discipline less than discharge for a particular occasion for any serious offense, that imposition of discipline shall not constitute a waiver by Employer of its right to impose discharge for any subsequent occurrence of the same or similar offense by any employee."

Signed on March 6, 2003, in Salinas, California

Rodeo Dental Group

Fritz Conle
Union Representative
Teamsters Union, Local 890

**PROOF OF SERVICE**

C.C.P. Section 1013a, C.C.P. Section 2015.5

Trustees of the Tri-Counties Welfare Trust Fund, et al. v. Bahrat Rakshak, DDS, et al.
Monterey County Superior Court, Case No. M 86583
United States District Court Northern District of California, Case No. C 07-06332 RMW

I, the undersigned, declare that:

I am employed in the County of Marin, State of California. I am over the age of 18 years and not a party to the within action. My business address is 1100 Larkspur Landing Circle, Suite 200, Larkspur, CA 94939.

On **February 15, 2008**, I served the attached:

**DECLARATION OF BHARAT RAKSHAK, DDS IN SUPPORT OF OPPOSITION TO MOTION TO REMAND**

(____) **BY FACSIMILE**: By transmitting the same from a facsimile machine (415) 464.8887 to the person(s) identified below whose facsimile transmission machine telephone number(s) listed below. The transmission was reported complete without error by a transmission report issued by the sending facsimile transmission machine.

( **XXX** )**BY MAIL**: I placed a true copy thereof in a sealed envelope, with postage thereon fully prepaid for first-class mail, in the designated outgoing mail receptacle at Bradley, Curley, Asiano, Barrabee & Crawford for collection by another employee who is responsible in the normal course of business, for depositing the stamped envelopes for mailing this same day in the United States Mail at 1100 Larkspur Landing Circle, Larkspur, California addressed to:

| | |
|---|---|
| **Attorneys for Plaintiffs**<br>**Matthew Morbello, Esq.**<br>**Teague P. Paterson, Esq.**<br>**Beeson Tayer & Bodine**<br>**1404 Franklin Street, Fifth Floor**<br>**Oakland, CA 94612**<br>**Tel: (510) 625-9700**<br>**Fax: (510) 625-8275** | **James Wold, Esq.**<br>**Wold Law Group**<br>**2455 Mission Street**<br>**San Marino, CA 91108** |
| **Michael A. Dubin, Esq.**<br>**Hooper, Lundy & Bookman, Inc.**<br>**575 Market Street, Suite 300**<br>**San Francisco, CA 94105** | |

(____) **BY FEDERAL EXPRESS**: I placed a true copy thereof in a sealed Federal Express overnight envelope. The overnight envelope was taken to the Federal Express drop off located at 1100 Larkspur Landing Circle, Larkspur, California, and was addressed as noted above:

(    ) **BY PERSONAL SERVICE**: I placed a true copy thereof in a sealed envelope, and caused such envelope to be delivered by hand to the addressee(s) noted above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed **February 15, 2008**, Larkspur, California.

Shawn P. Gordon