MATTHEW MORBELLO, SBN 190043
TEAGUE P. PATERSON, SBN 226659
BEESON, TAYER & BODINE, APC
1404 Franklin Street, 5th Floor
Oakland, CA 94612-3208
Telephone: (510) 625-9700
Facsimile: (510) 625-8275
Email: mmorbello@beesontayer.com
tpaterson@beesontayer.com

Attorneys for Plaintiffs
Trustees of the Tri-Counties Welfare Trust Fund
and Professional Group Administrators, Inc.

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**AT SAN JOSE**

| | |
|---|---|
| TRUSTEES OF THE TRI-COUNTIES WELFARE TRUST FUND and PROFESSIONAL GROUP ADMINISTRATORS, INC., <br><br> Plaintiff, <br><br> v. <br><br> BAHRAT RAKSHAK, DDS, a professional dental corporation, d/b/a RODEO DENTAL GROUP; LYNNE SIMMS, D.D.S., a professional dental corporation, d/b/a RODEO DENTAL GROUP; JESSICA HUANTE, individually; BAHRAT RAKSHAK, individually; LYNNE SIMMS, individually; DOES 1 through 15 inclusive, <br><br> Defendants. | Case No. C-07-06332 RMW <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANT'S OPPOSITION TO REMAND** <br><br> Hearing Date: March 14, 2008 <br> Hearing Time: 9:00 a.m. <br> Courtroom: Ctrm. 6, 4th Floor <br> Judge: Hon. Ronald M. Whyte <br> Complaint Filed: September 28, 2007 <br> Trial Date: TBD |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

I.   INTRODUCTION .........................................................................................................1

II.  ARGUMENT .................................................................................................................1

    A.   NO COMPLETE PREEMPTION UNDER LMRA § 301 .................................1

         1. This Lawsuit Does Not Seek to Vindicate Rights Provided
            by the CBA .................................................................................................2

         2. No Need to Interpret the Terms of the CBA ..............................................4

    B.   NO COMPLETE PREEMPTION UNDER ERISA ............................................6

         1. No Claim Under § 502(a)(2) .......................................................................7

         2. No Claim Under § 502(a)(3) .......................................................................8

         3. Defendant Relies On Out-of-Date Authority ..............................................9

    C.   THE NOTICE OF REMOVAL IS DEFECTIVE ..............................................10

III. CONCLUSION ............................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Abraham v. Norcal Waste Systems, Inc.* (9th Cir. 2001) 265 F.3d 811, 819 .............................. 6, 8, 9

*Arizona State Carpenters Pension Trust Fund v. Citibank* (9th Cir. 1997) 125 F.3d 715, 723 ......... 9

*Balcorta v. Twentieth Century-Fox Film Corp.* (9th Cir.2000) 208 F.3d 1102, 1108 ...................... 4

*Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*
(3rd Cir. 2002) 296 F.3d 164 ............................................................................................... 7

*Bowen v. U.S. Postal Service* (1983) 459 US 212, 224-225 ............................................................ 3

*Carpenters Southern California Administrative Corp. v. Majestic
Housing* (9th Cir. 1984) 43 F.2d 1341, 1344 .................................................................... 2,

*Cramer v. Consol. Freightways, Inc.* (9th Cir. 2001) 255 F.3d 683, 693 ......................................... 4

*Ethridge v. Harbor House Restaurant* (9th Cir. 1988) 861 F.2d 1389, 1395 ................................. 3

*Gaus v. Miles, Inc.* (9th Cir.1992) 980 F.2d 564, 566 ...................................................................... 1

*Geller v. County Line Auto Sales, Inc.* (2d Cir. 1996) 86 F.3d 18, 21-23 ........................................ 8

*Gerosa v. Savasta & Co., Inc.* (2d Cir. 2003) 329 F.3d 317 ............................................................ 9

*Lingle v. Norge Division of Magic Chef Inc.* (1988) 486 U.S. 399, n. 12 ........................................ 6

*Livadas v. Bradshaw* (1994) 512 U.S. 107, 122-24 .............................................................. 1, 2, 3, 4

*Milne Employees Ass'n v. Sun Carriers* (9th Cir. 1991) 960 F.2d 1401, 1407 .............................. 2, 4

*Morstein v. Nat'l Ins. Serv., Inc.* (11th Cir.1996) 93 F.3d 715, 723 ................................................ 8

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers
Insurance Co.* (1995) 514 U.S. 645 .................................................................................... 9

*Nishimoto v. Federman-Bachrach & Associates* (9th Cir.1990) 903 F.2d 709, 714 ....................... 9

*Olson v. General Dynamic Corp.* (9th Cir. 1991) 960 F.2d 1418 .................................................... 9

*Painting & Decorating Contractors Ass'n v. Painters & Decorators
Joint Comm.* (9th Cir.1983) 707 F.2d 1067 .................................................................... 2, 4

*Rutledge v. Seyfarth, Shaw* (9th Cir.2000) 201 F.3d 1212, 1219 ..................................................... 8

*Sasso v. Cervon* (2d Cir. 1993) 985 F.2d 49, 51 .............................................................................. 7

*Trustees of the AFTRA Health Fund v. Biondi* (7th Cir.2002) 303 F.3d 765, 777-79 .................. 8, 9

*Ward v. Circus Circus Casinos, Inc.* (9th Cir. 2007) 473 F.3d 994, 998 ........................................ 5

*Williams v. Caterpillar Tractor Co.* (9th Cir. 1986) 786 F.2d 928, 935 ................................ 2

*Wilson v. Zoellner* (8th Cir.1997) 114 F.3d 713, 721 ................................................................ 8

*Young v. Anthony's Fish Grottos, Inc.* (9th Cir.1987) 830 F.2d 993, 997 ........................... 3

**Code of Civil Procedure**

California Code of Civil Procedure § 415.20 ............................................................................ 10

**U.S. Statutes**

28 U.S.C. § 1447(c) ............................................................................................................. 11

29 U.S.C. § 185(a) (LMRA § 301(a)) .............................................................................. passim

29 U.S.C. § 1002(1) (ERISA § 102) .................................................................................... 8

29 U.S.C. § 1002(21)(A) (ERISA § 102(21)) .................................................................. 7, 8

29 U.S.C. § 1104 (ERISA § 404) ........................................................................................ 8

29 U.S.C. § 1109 (ERISA § 409) ........................................................................................ 7

29 U.S.C. § 1132(a) (ERISA § 502(a)) ....................................................................... passim

29 U.S.C. § 1144(a) (ERISA § 514(a)) ............................................................................ 6, 7

29 U.S.C. § 1145 (ERISA § 515) ........................................................................................ 5

## I. INTRODUCTION

Plaintiffs the Trustees of the Tri-Counties Welfare Trust Fund ("Trustees" and "Tri-Counties," respectively) and Professional Group Administrators ("PGA") submit this memorandum in Reply to Defendant Rakshak DDS' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion to Remand ("Opposition Brief"). The removal statute "is strictly construed, and any doubt about the right of removal is resolved in favor of remand," the strong presumption against removal means that "the defendant always has the burden of establishing that removal is proper." Gaus v. Miles, Inc. (9th Cir.1992) 980 F.2d 564, 566.

Despite submitting three declarations in opposition to remand, Defendant Rakshak has failed to meet his burden (1) that the lawsuit seeks to enforce rights governed by a collective bargaining agreement and will require interpretation of such collective bargaining agreement; nor (2) that ERISA completely preempts the Tri-Counties' claims; or (3) that removal was properly effected.

## II. ARGUMENT

### A. No Complete Preemption Under LMRA § 301

Rakshak has removed this action under § 301 of the Labor Management Relations Act ("LMRA" -- 29 U.S.C. §§ 185, et seq.) because there exists a collective bargaining agreement between Rodeo Dental and Teamsters Local 890 (the "CBA"). But this lawsuit does not seek to enforce rights provided under the CBA, and Tri-Counties is not a party to that agreement (see Rakshak Decl.; Ex. A). Rather, the lawsuit was triggered by damages resulting from Defendants' attempt to fraudulently enroll a third-party into the Tri-Counties' plan of benefits. As described below, Tri-Counties' claims are not removable under the LMRA's "complete preemption" doctrine because they are predicated on rights provided under state law and are not governed by the terms of the CBA.

For this Court to have removal jurisdiction under § 301, the action must both relate to the CBA and seek to remedy a breach of the CBA. In Franchise Tax Board, 463 U.S. at 25 n. 28, the Supreme Court noted that "even under § 301 we have never intimated that any action merely relating to a contract within the coverage of § 301 arises exclusively under that section." And in Livadas the Court explained that "it is the legal character of a claim, as 'independent' of rights under the

1  collective-bargaining agreement ... that decides whether a state cause of action" is preempted.
2  Livadas v. Bradshaw, (1994) 512 U.S. 107, 122-24 (internal citations and quotations omitted).
3        To add clarity to and direction to the analysis, the Ninth Circuit articulated a two-part test for
4  determining removal jurisdiction under § 301; the action must be "based on an alleged breach of
5  contract between an employer and a labor organization *and* ... the resolution of the lawsuit must be
6  focused upon and governed by the terms of the contract." Painting & Decorating Contractors Ass'n
7  v. Painters & Decorators Joint Comm. (9th Cir.1983) 707 F.2d 1067, 1070, cert. denied, 466 U.S.
8  927, (emphasis added) ("Painters"); see also Milne Employees Ass'n v. Sun Carriers (9th Cir. 1991)
9  960 F.2d 1401, 1407.

      ***1. This Lawsuit Does Not Seek to Vindicate Rights Provided by the CBA***

11        While § 301 requires CBAs to be interpreted and applied in accordance with federal law, that
12  does not mean federal courts have removal jurisdiction over all cases that may involve a CBA.
13  Section 301 applies only to suits for *violation* of such contracts. See 29 U.S.C. § 185(a); Painters,
14  707 F.2d at 1071. Therefore "for jurisdiction to lie under § 301, the rights and liabilities of the
15  parties ... must be a product of the bargaining agreement itself, and not of some other origin."
16  Williams v. Caterpillar Tractor Co. (9th Cir. 1986) 786 F.2d 928, 935, affirmed (1987) 482 U.S. 386.
17        Here, Tri-Counties -- which is not a party to the CBA – asserts claims that are independent of
18  the rights created in the CBA between Rodeo Dental and the Union. The CBA may contain terms
19  regarding employee eligibility for Tri-Counties' plan of benefits, but the CBA does not address
20  whether an employer may fraudulently enroll a non-employee in the plan. Such is necessarily a state
21  law claim.
22        In Majestic Housing the Ninth Circuit held that a mechanics lien imposed upon defendant was
23  a statutory liability outside the jurisdiction of § 301 despite the fact that the amount of the lien was
24  determined by the collective bargaining agreement. Carpenters Southern California Administrative
25  Corp. v. Majestic Housing (9th Cir. 1984) 43 F.2d 1341, 1344. The Ninth Circuit found that the first
26  part of the Painters test was satisfied when the subcontractor failed to make payments required under
27  the collective bargaining agreement, which breach gave rise to the mechanics lien, however the court
28  determined that the second part of the test was not satisfied because defendant's liability was not

"focused upon" the collective bargaining agreement. Id. Rather, the court found no preemption because "although the amount of the mechanic's lien must be determined by the terms of the collective bargaining agreement" the defendant did not itself have "rights or liabilities under the agreement." Id.

On this basis the Defendant's reason for removal jurisdiction fails because, as the Ninth Circuit has noted: "In applying the 'complete preemption' doctrine, we have emphasized that it is not enough that federal law preempts state law, federal law also must 'supplant the state law claim with a federal claim.'" Ethridge v. Harbor House Restaurant (9th Cir. 1988) 861 F.2d 1389, 1395, quoting Young v. Anthony's Fish Grottos, Inc. (9th Cir.1987) 830 F.2d 993, 997. In Ethridge, at 1395, the Ninth Circuit went on to hold that:

> The federal claim requirement arises from the limitations on removal jurisdiction contained in 28 U.S.C. § 1441. If the plaintiff could not have asserted a federal claim based on the allegations of her state law complaint, she could not have brought the case originally in federal court as required for removal jurisdiction under section 1441.

For these reasons this lawsuit is preempted only if it could have been brought to vindicate rights established by the CBA. Although Defendant has put the CBA in evidence, he has not indicated how it governs the claims raised in this lawsuit.

The authority cited by Defendant in the Opposition Brief stands for the proposition that had Ms. Huante sued Rodeo Dental -- her former employer -- under state law regarding the terms and conditions of her employment, such claims would have been completely preempted by the LMRA. See Opposition Brief 6-7, citing Young v. Anthony's Fish Grottos (9th Cir. 1987) 830 F.2d 993, Bowen v. U.S. Postal Service (1983) 459 US 212, 224-225. In that regard Defendant's logic is impeccable, but it is also inapplicable. Each case cited by Defendant involves a lawsuit by a union-represented employee against an employer for redress of a dispute relating to the employment relationship. As explained above, this case is quite different, involving a health and welfare fund's lawsuit for damages against a participating employer for a fraud committed against it. The CBA does not govern such conduct and provides no mode of redress.

Using the Supreme Court's pronouncement in Livadas as a guide, if the "legal character" of Tri-Counties' claims is founded on redress of state-law violations and is "independent" of the "rights

under the collective-bargaining agreement," then Defendant's removal was improper. Livadas, 512 U.S. at 122-24. Tri-Counties' claims are not *ex contractu*, which is necessary for removal jurisdiction, rather they are predicated on *ex delicto* conduct, namely fraud and misrepresentation. This fact was recognized in Milne, where the Ninth Circuit noted that "the fraud claims do not originate in or refer to rights and duties derived from the collective bargaining agreement," and that state law provides for duties of disclosure that are independent of the union bargaining relationship. Milne, 960 F.2d at 1409

### 2. *No Need to Interpret the Terms of the CBA*

Keeping the two-part test in mind, the Court must find not only that the suit seeks to enforce rights under the CBA, but that the CBA must be interpreted and applied in order to resolve of the lawsuit. Painters, 707 F.2d at 1071. Under complete preemption's "artful pleading" corollary to the well-plead complaint rule, the Court may look beyond the Complaint to asses its jurisdictional reach. But as the Ninth Circuit recently noted, "the plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim." Cramer v. Consol. Freightways, Inc. (9th Cir. 2001) 255 F.3d 683, 691. Removal based on the existence of a CBA that may require application or reference is improper, rather that CBA must govern and remedy the rights on which plaintiffs have sued – it must be inherent or innate to the claim.

A "state law claim is not preempted under § 301 unless it necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute." Id. Defendants have not articulated a basis for the necessity of interpreting the CBA, especially since the Ninth Circuit has "stressed ... the term 'interpret' is defined narrowly - it means something more than 'consider,' 'refer to,' or 'apply.'" Balcorta v. Twentieth Century-Fox Film Corp. (9th Cir. 2000) 208 F.3d 1102, 1108 (citation omitted).

Defendant has not established the 'inherent' centrality of the CBA to the Tri-Counties' claims. Instead, Defendant has simply acknowledged the existence of the CBA between it and Teamsters Local 890 and then evoked various irrelevant portions of the CBA in order to justify removal jurisdiction. Defendant cites various portions of the CBA, without support or explanation that he contends require "extensive interpretation" to resolve this dispute.

     Defendant asserts hypothetically that (1) Huante may have been on medical leave, (2) such leave might affect her seniority, and (3) the "effect" of Rodeo Dental's failure to make fund contributions. (Opposition Brief at p. 7). Notwithstanding the lack of evidence that any of these matters are material to Tri-Counties' claims, there is no citation to the Complaint that indicates how any of these terms govern or "inhere" to the resolution of the dispute. Defendant's vague references – without citation - to what "Plaintiffs assert" are equally unhelpful and unfounded. However, the scope of LMRA preemption is more limited than Defendant's imagination and "a defense based on the CBA is alone insufficient to require preemption." Ward v. Circus Circus Casinos, Inc. (9th Cir. 2007) 473 F.3d 994, 998. Defendant has submitted three declarations none of which contain any facts suggestion that the CBA is central to this dispute.

     But even if the Court is inclined to delve into Defendant's postulations, it will find little that implicates Tri-Counties' claims. Defendant's argument rest on the following:

- Defendant posits that preemption is proper because "[t]he effect of Ms. Diaz' pregnancy leave on her seniority and eligibility for benefits must be considered by analyzing Article 20 regarding 'Leaves of Absence'" (Opposition Brief, 7). But Article 20.1 of the CBA states simply "Seniority shall accumulated [sic] during the leave of absence, and upon returning to work the employee shall be reinstated without loss of seniority." It is hard to fathom how that provision requires juridical interpretation sufficient to require federal preemption.

- Defendant also contends that the "analysis is complicated by the subsequent 'Letter of Understanding'… which modified the eligibility requirements" for benefits (Opposition Brief, p. 7:16-19). But the Letter of Understanding ("LOU"), with respect to health benefits, contains only provisions relating to the cost of providing such benefits. It does not implicate eligibility (and even if it did, as described above, that fact alone would not confer federal jurisdiction).

- Defendant also maintains that Article 24.1 of the CBA -- dealing with "premium payments" -- requires interpretation or application in this lawsuit. That provision states, with regard to health benefits that "[p]ayment of premium shall be made by the 10th of each current month during the period of this agreement." (Rakshak Decl., Ex. A). If this were a lawsuit seeking payment of delinquent contributions pursuant to 29 U.S.C. § 1145, Tri-Counties could bring suit under the LMRA. But this is not such a case. If Defendants contend that they made payment of the

premiums which constitutes a defense to this lawsuit (they have not done so), they may make that argument in state court. No detailed interpretation of that provision governs the rights of the parties with respect to fraud and misrepresentation. Simply, Tri-Counties does not seek payment of delinquent contributions, rather it seeks damages arising from Rakshak's fraudulent attempt to enroll a non-employee in the Tri-Counties plan of benefits, to which Article 24.1 provides no right of redress.

Nor do the health and welfare eligibility provisions in the CBA come into play in this action. Tri-Counties has alleged that at the time the services were rendered, Ms. Huante had not been an employee of Rodeo Dental entitled to benefits under the plan, and therefore should not have been reported to Tri-Counties as such. Tellingly, Defendant has not submitted any evidence of Huante's employment status. As alleged in the complaint, Ms. Huante was not an employee and so the terms of the CBA were not applicable to her (Complaint, ¶¶ 7, 25, 26 & 28).

It is important to note that because the LMRA requires labor contracts to be interpreted through federal law does not mean that a federal court must do the interpreting. As the Supreme Court has indicated: "a state law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state law analysis would not be thereby pre-empted" Lingle v. Norge Division of Magic Chef Inc. (1988) 486 U.S. 399, n. 12.

### B.  No Complete Preemption Under ERISA

In his opposition Defendant rides roughshod over the distinction between ERISA § 502(a) and § 514 (29 U.S.C. § 1132 and § 1144, respectively). To be sure, ERISA § 514 preempts state laws that "relate to" employee benefit plans, but this "conflict preemption" doctrine does not create federal removal jurisdiction. If Defendants seek to assert that § 514 preempts Tri-Counties fraud claim, it may make that argument in state court. Instead, the complete preemption doctrine, which provides the only basis for removal to federal court under ERISA, derives from ERISA § 502(a) (also referred to as "displacement preemption"). See Abraham v. Norcal Waste Systems, Inc. (9th Cir. 2001) 265 F.3d 811, 819. As explained in Abraham: "Complete preemption can be invoked only when two conditions are satisfied: (1) ERISA expressly preempts the state law cause of action under 29 U.S.C.

§ 1144(a) ( *i.e.* "conflict preemption") *and* (2) that cause of action is encompassed by the scope of the civil enforcement provision of ERISA, 29 U.S.C. § 1132(a) (*i.e.* "displacement")." Id. (emphasis added).

The Court's analysis therefore does not solely consist of whether the state law fraud claims "relate to" employee benefit plans (which may warrant a preemption defense in state court), but also whether the Tri-Counties' claims could have been brought under § 502(a).

To reach its conclusion the Court must analyze the language of § 502(a) – something Defendant neglects to do. The only provisions under § 502(a) that authorize suits by plan fiduciaries such as the Trustees are subsections (a)(2) and (a)(3), which provide for rights of actions:

> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132(a)(2) & (3).

### *1. No claim Under § 502(a)(2)*

Subsection (a)(2) governs actions brought against fiduciaries for breaches of their fiduciary duties. Defendant claims Rodeo Dental Group is a plan fiduciary under ERISA (Opposition Brief, 8:14-16). Defendant provides no support, legal or factual, for this surprising statement, likely because just the opposite is the case. See 29 U.S.C. § 1002(21)(A); see also Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc. (3rd Cir. 2002) 296 F.3d 164, 174 (participating employers "are not automatically fiduciaries pursuant to ERISA, as amended by the MPPAA, even if they are 'employers.'"); Sasso v. Cervon, (2d Cir. 1993) 985 F.2d 49, 51 (same holding).

ERISA's definition of "fiduciary" is functional and not simply based on status. Thus, ERISA § 102(21)(a) defines what a fiduciary is by what she does:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(a).

Unless Rodeo Dental can come forward with uncontroverted evidence that it exercises control and discretion over the Plan's administration and assets, it is not an ERISA fiduciary. But even if Defendants were fiduciaries, they have not explained how this lawsuit is more appropriately labeled a claim for breach of the fiduciary duties described under ERISA § 404 (29 U.S.C. § 1104). See e.g. Abraham v. Norcal Waste Systems, Inc., (9th Cir. 2001) 265 F.3d 811, 825 ("irrespective of the status of any of Defendants as the fiduciaries of an ERISA plan, none of the state law claims can be characterized as fiduciary breach claims within the scope of ERISA's civil enforcement provision. Simply put, the claims do not concern any plan fiduciaries in their capacity as such.")

### 2. No Claim Under § 502(a)(3)

Subsection (a)(3) allows plan fiduciaries to bring actions to redress violations of the terms of the plan or of ERISA itself. Rakshak has neglected to indicate a provision of either ERISA or the Tri-Counties' plan that provides relief for fraudulent inducement or misrepresentation. There is good reason for this neglect, because under ERISA there is no such provision. Simply, fraud and misrepresentation were not codified within the statutory scheme. As for Defendant's assertion that the claim against him could be asserted as a violation of the plan, there is no basis to this because ERISA plans govern the provision of benefits to plan participants. See 29 U.S.C. § 1002(1). A plan of benefits does not regulate the relationship between the plan sponsor – here the Trustees -- and the employers who participate in such plan.

In addition to Trustees of the AFTRA Health Fund v. Biondi (7th Cir.2002) 303 F.3d 765, 777-79, discussed in Plaintiffs' opening brief, many courts have routinely found that an ERISA plans' fraud and misrepresentation claims are not preempted when such claims are not asserted against other plan fiduciaries. LeBlanc, 153 F.3d at 147 (fraud claim by trustees against plan's investment advisor not preempted as it would "not undermine any of ERISA's objectives."); Geller v. County Line Auto Sales, Inc. (2d Cir. 1996) 86 F.3d 18, 21-23 (fraud claim not preempted, regardless of some available equitable remedies under ERISA); Rutledge v. Seyfarth, Shaw (9th Cir. 2000) 201 F.3d 1212, 1219; Morstein v. Nat'l Ins. Serv., Inc. (11th Cir.1996) 93 F.3d 715, 723 (ERISA does not preempt a fraudulent inducement claim against insurance agent); Wilson v. Zoellner (8th Cir.1997)

8

114 F.3d 713, 721 ("ERISA does not preempt [plaintiff's] suit against [an insurance agent] for the Missouri state common-law tort of negligent misrepresentation").

Rakshak has failed to explain how the Trustees are enforcing a right to benefits or how they are enforcing the terms of the plan. Where the claims do not fall within the claims delineated under § 502(a), there is neither conflict preemption nor removal jurisdiction. Abraham, 265 F.3d at 825 ("Nor do they otherwise fall within the scope of ERISA's civil enforcement provision, 29 U.S.C. § 1132(a). We conclude therefore that there was no basis for displacement under ERISA; thus, the second condition for complete preemption was also unsatisfied.") Here, Tri-Counties' state law claims are not alternative enforcement mechanisms to § 502(a), and so removal jurisdiction is not warranted.

### 3. Defendant Relies On Out-of-Date Authority

In support of their ERISA preemption argument Defendant cites to one case for substantive points, Olson v. General Dynamic Corp. (9th Cir. 1991) 960 F.2d 1418. That case was decided before the Supreme Court's decision in New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co. (1995) 514 U.S. 645 ("Travelers"), which vastly reined in the Circuit Courts' findings regarding complete preemption under ERISA. See, e.g., Gerosa v. Savasta & Co., Inc. (2d Cir. 2003) 329 F.3d 317, 327 (noting "Travelers occasioned a significant change in preemption analysis, and required careful reconsideration of any preexisting precedent dependent on the expansive view of "related to" that held sway before it); See also AFTRA, 303 F.3d at 773; Arizona State Carpenters Pension Trust Fund v. Citibank (9th Cir. 1997) 125 F.3d 715, 723. Indeed in Arizona Carpenters the Ninth Circuit reconsidered its initial holding based on the intervening Travelers opinion, and reversed its decision concluding that under the new standard there was no preemption. See Ariz. Carpenters, 125 F.3d at 723.

In any event, the Olson case is easily distinguished as the employee/plan participant in that case could have brought suit under § 502(a)(3) to enforce the terms of the plans. Here there is no indication that Huante was in fact a "plan participant" at the time Rakshak committed the fraud, or that any terms of the plan or ERISA are implicated. Nishimoto v. Federman-Bachrach & Associates (9th Cir. 1990) 903 F.2d 709, 714 (former employees with no entitlement to benefits are not plan

participants under ERISA).

### C. The Notice Of Removal Is Defective

Rakshak raises questions about the service of process on Huante, but Huante's declaration is insufficient to permit this court to determine whether effective service was or was not made.

First, Huante's declaration states that no personal service was made on her. Huante Decl., ¶ 2. This is not proper testimony, as the nature and effect of service is, of course, a legal conclusion for the Court to determine. The proof of service shows that substituted, not personal, service was made on Huante, pursuant to California Code of Civil Procedure § 415.20. (Morbello Decl., ¶ 3, Ex. A). Whether Huante was personally served or not is not determinative of whether personal jurisdiction is effective.

Next, Huante claims that the zip code shown on the proof of service is incorrect. (Huante Decl., ¶ 3). She does not deny that the address, however, was correct or that the individual who accepted the complaint and summons from the process-service was her grandfather, Gilberto Meija. (Morbello Decl., ¶ 3, Ex. A). Huante also does not deny that she lived at 750 Colton Drive in Salinas, California at the time substituted service was made. Huante declares that she has "not received any legal papers in the mail from the Beeson, Tayer & Bodine law firm regarding a legal action against me." Huante Decl., ¶ 3. The veracity of this statement must be questioned in light of the proofs of service filed for both the Motion to Remand and the Clerk's Notice of Continuance, which bear Huante's 750 Colton Drive address with the correct zip code. Even if Huante truthfully declares that she has not received any legal papers from Tri-Counties' law firm in the mail, the failure to obtain declarations from other residents of her household leaves open the possibility that the complaint and summons arrived in the mail but were not given to Huante.

Further, Rakshak's brief suggests that service was made on the "wrong person," presumably – although this is never stated in the brief – because Huante's name was either misspelled "Huarte" or had changed to "Diaz." (Opposition Brief, p. 4:4-6; 5:21-24). Huante could not credibly testify that she would assume legal papers addressed to Jessica "Huarte" arriving at her address are not intended for her receipt. As to "Diaz," no explanation is provided in the brief or declarations for the apparent change of name or when the change was effective, let alone whether it caused any confusion on the

MEMO OF P&A'S IN REPLY TO DEF'S OPPOSITION TO REMAND
Case No. C-07-06332 RMW

10

77856.doc

1 part of Ms. Huante. Service was made on the correct person.

2   Rakshak's counsel's declaration to the effect that the proof of service was not filed before the notice of removal was filed is irrelevant. The determinative event is the service of the complaint and summons, not the filing of the proof of service.

   Finally, Rakshak states, without citation, that joinder of Huante was not required because she is a "nominal" defendant, and that Tri-Counties would have taken a default judgment against her if it believed otherwise. (Opposition Brief, p. 5:26-6:1). To the extent its subjective intent is relevant, Tri-Counties does not believe that Huante is a nominal defendant and rather is of the opinion that her role and liability are central to the underlying dispute. Tri-Counties could not have moved in state court for default against Huante once the notice of removal was filed, nor would it make sense to file for default in this court while simultaneously moving to remand for lack of jurisdiction.

   In short, Huante's declaration fails to establish that service of the summons and complaint were not effected prior to the filing of the notice of removal. Should the Court find that the complaint is preempted by the LMRA and/or ERISA, Tri-Counties requests an opportunity to take discovery related to whether service was effected on Huante prior to the filing of the notice of removal.

### III. CONCLUSION

For the reasons set forth above, Plaintiffs request the case be remanded and they be awarded their reasonable attorney's fees and costs incurred as a result of the removal pursuant to 28 U.S.C. § 1447(c).

Dated: February 26, 2008         BEESON, TAYER & BODINE, APC

                                 By: _____
                                 TEAGUE P. PATERSON
                                 MATTHEW MORBELLO
                                 Attorneys for Plaintiffs Trustees of the
                                 Tri-Counties Welfare Trust Fund and
                                 Professional Group Administrators, Inc.